Albert A. **MOKAL**, Petitioner,

v.

Edward J. **DERWINSKI**, Secretary of Veterans Affairs, Respondent.

No. 89–23.

United States Court of Veterans Appeals.

Submitted Dec. 4, 1989.

Decided March 9, 1990.

Marie E. Marlow, petitioner's custodian, for petitioner.

Thomas A. McLaughlin, with whom Raoul L. Carroll, Gen. Counsel, Andrew J. Mullen, Acting Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on Respondent's Answer to Petition and Supplemental Memorandum, for respondent.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

NEBEKER, Chief Judge:

Petitioner's daughter Marie E. Marlow, who is acting as his custodian, sent a letter to the Court, which we treat as a petition, requesting that the Court preempt the appeal process within the Department of Veterans Affairs (DVA) and assume jurisdiction over the petitioner's claim under the All Writs Act, 28 U.S.C. § 1651 (1982). In the alternative, petitioner requested that the Court issue a writ of mandamus compelling the Regional Office of the DVA to issue a delayed Statement of the Case, the document required to secure review before the Board of Veterans' Appeals (BVA).

Before the Court ruled on the petition, the Regional Office issued the Statement of the Case. The Secretary contended, without supporting analysis, that the request for a writ should be dismissed because the controversy giving rise to the request had been resolved and the question was moot. He also contended that the Court lacked authority to assume jurisdiction and adjudicate petitioner's claim on the merits. Subsequently, the Court requested the Secretary to elaborate on the mootness of the petition and the application of the Article III case or controversy stricture of the Constitution by this Article I Court.

In a footnote, the Secretary also questioned, without citation of support, Mrs. Marlow's authority to file an action in petitioner's behalf. She responded that the forms she filed with the DVA authorizing her to receive DVA funds for petitioner, as well the DVA instructions that specify who may represent a claimant in an appeal to the BVA, authorize her to appeal to the Court. She also contends that the Statement of the Case issued by the Regional Office is substantively defective and again asks the Court to preempt the BVA and hear the case on its merits.

We hold that a custodian's authority to represent a claimant before the DVA also permits prosecution of proceedings before this Court. We also hold that the Court will adhere to the case or controversy jurisdictional restraints adopted by Article III courts and we dismiss the petition for a writ of mandamus as moot. We need not consider the merits of petitioner's argument with respect to the underlying case because petitioner has not exhausted available administrative remedies.

■ As a preliminary matter, we note that the Court has authority to issue writs in aid of its jurisdiction. *Erspamer v. Derwinski*, 1 Vet.App. 3 (1990); *In re Quigley*, 1 Vet.App. 1 (1990); 28 U.S.C. § 1651 (1982). The Court has liberally construed petitioner's pleadings as requests for All Writs relief. Given the authority to entertain requests for All Writs relief, we must determine whether the petitioner's daughter has authority to file a petition on behalf of her father.

14

■ The rather bare contention that Mrs. Marlow lacks authority to press her father's claim in this Court fails when viewed against the purpose for creating the Court. Congress, in providing for judicial review of veterans' claims, conferred on the Court "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals," 38 U.S.C.A. § 4052 (West Supp. 1989), and provided that "a person adversely affected by [a final decision of the Board may] file a notice of appeal with the Court," 38 U.S.C.A. § 4066 (West Supp. 1989). These enactments do not differentiate between the review of claims brought directly by a claimant and those brought through a custodian.

Since Congress was aware that custodial representation of claimants was an established practice in veterans benefits matters, we see no reason to succumb to the Secretary's invitation to impede access of incompetents represented by recognized guardians to the Court. Indeed, to do so without some rational basis—not suggested by the Secretary—would be questionable as a due process denial, and would deny a disadvantaged class of claimants access to review in this Court. We hold that the recognized fiduciary relationship between a claimant before the DVA and a custodian—whether created under state law or by the Secretary—is sufficient to empower that custodian to pursue remedies before this Court.

We turn to the substantive issues of the petition. The Secretary argues that the controversy underlying the petition for a writ of mandamus is moot. He notes that Article III courts are prohibited by the case or controversy requirement from exercising judicial power over moot questions. He acknowledges that Congress may authorize Article I courts to perform functions denied Article III courts, but argues that the absence of specific authorization to issue advisory opinions precludes issuing such opinions. In addition, the Secretary suggests that other Article I courts, specifically the District of Columbia Court of Appeals and the United States Claims Court, have determined that the exercise of their power is limited to cases or controversies and urges the Court to follow their example.

The legislation that created the District of Columbia Court of Appeals, unlike the legislation that created the Court of Veterans Appeals, provided a basis for adopting a case or controversy requirement. *See United States v. Cummings,* 301 A.2d 229, 231 (D.C.1973) ("D.C.Code 1967, § 11–705 (Supp.V, 1972) provides for the hearing of '[c]ases and controversies' by [the District of Columbia Court of Appeals]."). The Court of Claims, predecessor to the United States Claims Court, relied on Supreme Court decisions limiting the use of judicial power by Article III courts when it determined that the use of its power is limited to cases or controversies. *See Manufacturers Hanover Trust Co. v. United States,* 218 Ct.Cl. 563, 590 F.2d 893, 894 (1978) (citing *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971); *United States v. Alaska S.S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920)). We recognize that these courts adopted the case or controversy restraint based on sound policies and constitutional considerations, and while the Court of Veterans Appeals is not bound by the decisions of its sister Article I courts, we accord them great respect.

The Secretary's argument understandably shies away from a constitutional analysis of the nature of this Court's power as a court or tribunal established under Article I. 38 U.S.C.A. § 4051 (West Supp. 1989). It is little wonder, since the Supreme Court's decisions in this area "do not admit of easy synthesis." *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 847, 106 S.Ct. 3245, 3254, 92 L.Ed.2d 675 (1986); *Northern Pipeline Constr. v. Marathon Pipe Line Co.,* 458 U.S. 50, 91, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598 (1982). The Article III case or controversy requirement specifically limits the exercise of the "judicial Power of the United States." U.S. Const. art. III, § 1. The Supreme Court has only applied the Article III case or controversy restraint to the exercise of judicial power by Article III courts. Whether a non-Article III body can exercise the judicial power has occupied the

attention of the Supreme Court since Chief Justice Marshall introduced the question. *See American Ins. Co. v. Canter*, 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1824). The latest chapter on the controversy was opened in *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

In *Palmore* the Supreme Court expressly upheld the exercise of judicial power by an Article I court in a federal criminal case and observed that Congress was not limited to delegating judicial power to Article III courts, *Id.* at 400–01, 93 S.Ct. at 1677–78. Although *Palmore* has not been overruled, Justice Brennan, writing for a plurality in *Northern Pipeline*, would limit *Palmore* to its facts and readopt a literal interpretation of Article III in which "[t]he judicial power of the United States must be exercised by courts having the attributes prescribed by Art. III." 458 U.S. at 59, 102 S.Ct. at 2865. Since *Northern Pipeline*, the Supreme Court has adopted a balancing test and "declined to adopt formalistic and unbending rules" in determining the extent to which Congress can authorize "the adjudication of Article III business in a non-Article III tribunal." *Commodity Futures Trading Comm'n*, 478 U.S. at 851, 106 S.Ct. at 3256 (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 587, 105 S.Ct. 3325, 3336, 87 L.Ed.2d 409 (1985)). Post–*Northern Pipeline* majority opinions have not discussed the type of power exercised by non-Article III adjudicatory bodies.

We recognize the unsettled nature of the law in this area and do not attempt to resolve the controversy for purposes of this case. We do note, however, that the Court of Veterans Appeals exercises power comprising essential attributes of judicial power. *See Gordon v. United States*, 117 U.S. 697, 702 (1864). The Court has the power to render a judgment that will bind the rights of the parties litigating before it, 38 U.S.C.A. § 4052 (West Supp.1989), award execution of a judgment, and adjudicate contempt, 38 U.S.C.A. § 4065 (West Supp.1989).

■ Under these circumstances, it is sufficient to observe that we are granted power judicial in nature and being statutorily characterized as a "Court" we are free, in the absence of a congressional directive to the contrary, to adopt as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric. Since the controversy surrounding this petition is moot, *see State Highway Comm'n v. Volpe*, 479 F.2d 1099 (8th Cir.1973), we hold that the Court no longer has jurisdiction and the petition is dismissed insofar as it seeks mandamus relief.

■ Finally, petitioner asserts that the Statement of the Case the Regional Office issued is defective and asks the Court to preempt the BVA and hear the merits of his claim. Because petitioner has not exhausted administrative remedies available to him, the Court need not examine the substance of the Statement of the Case and will not preempt the BVA to hear the merits of the claim. We express no view on the power of the Court by certiorari, or otherwise, to preempt a demonstrably futile administrative review process. *See Erspamer v. Derwinski*, 1 Vet.App. 3 (1990); *In re Quigley*, 1 Vet.App. 1 (1990).

The request to preempt is denied.

So ordered.