# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1032

MILDRED NOLAN, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided      August 30, 2006   )

*Robert B. Haemer*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Deputy Assistant General Counsel; and *Gary O'Connor*, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, MOORMAN, and SCHOELEN, *Judge*s.

SCHOELEN, *Judge*, filed the opinion of the Court.  KASOLD, *Judge*, filed a concurring opinion.

SCHOELEN, *Judge*:  The appellant, Mildred Nolan, through counsel, appealed a May 10, 2004, Board of Veterans' Appeals (Board) decision in which the Board (1) denied entitlement to an effective date earlier than September 1, 1999, for the payment of accrued benefits and (2) determined that 38 U.S.C. § 5310 did not allow her to receive additional retroactive benefits totaling the entire sum of money that her husband, veteran Edward J. Nolan, would have received, but for his death, during the month of his death.  Record (R.) at 1-11.  On September 19, 2005, the Secretary filed an opposed motion to dismiss this appeal, stating that Mrs. Nolan's attorney had informed counsel for the Secretary that Mrs. Nolan had died.  On September 21, 2005, Maureen Gage, acting pro se, filed an opposed motion to substitute herself for the appellant, stating that she is the daughter of Mrs. Nolan.  This appeal is timely, and the Court has jurisdiction over the case pursuant to 38 U.S.C.

§§ 7252(a) and 7266. For the following reasons, the Court will deny Mrs. Gage's motion, grant the Secretary's motion, vacate the Board's decision as to the matter on appeal, and dismiss this appeal.

## I. BACKGROUND

### A. Mr. Nolan's Claims

Veteran Edward J. Nolan served on active duty in the U.S. Army from February 1942 to December 1945. R. at 17. Service medical records indicate that while serving in Belgium in September 1944, Mr. Nolan suffered a through-and-through gunshot wound in the right shoulder as a result of enemy action. R. at 40.

In March 1949, Mr. Nolan submitted an application for disability compensation benefits for, among other things, a right shoulder wound. R. at 58-61. In a September 19, 1949, decision, a VA regional office (RO) granted service connection for "perforating, gunshot wounds r[igh]t shoulder and r[igh]t back," effective March 29, 1949. R. at 73. He was assigned a 10% disability rating under Diagnostic Code (DC) 5304. *Id.* In December 1949, November 1987, and November 1999 decisions, the RO determined that no increase in his 10% rating was warranted. R. at 87, 115, 120-22.

In a December 1999 letter, Mr. Nolan requested that the September 19, 1949, RO decision be revised on the basis of clear and unmistakable error (CUE). R. at 124-25. He specifically argued that, because his gunshot wound was a through-and-through wound, he was entitled to a 20% disability rating under DC 5303 based on an injury to Muscle Group (MG) III, in addition to the 10% disability rating awarded under DC 5304 based on an injury to MG IV. *Id.* A May 2000 RO decision found no CUE in the September 1949 RO decision. R. at 131-46. However, the RO increased his rating for the residuals of a gunshot wound to 20%, effective July 22, 1999, based on limitation of motion of the shoulder. *Id.* Mr. Nolan appealed this decision to the Board. R. at 150, 174.

An August 27, 2001, letter from a private doctor indicated that Mr. Nolan had been recently diagnosed with myelodysplastic syndrome, a terminal illness. R. at 192. On September 5, 2001, Maureen Gage, faxed that letter to the Board and asked that it be considered "as a Motion to Advance on the Docket for my father, Edward J. Nolan." R. at 209. On September 10, 2001, a

Deputy Vice Chairman of the Board granted the motion to advance the appeal on the Board's docket. R. at 214. Mr. Nolan died on September 10, 2001. R. at 225.

On September 28, 2001, presumably acting without knowledge of Mr. Nolan's death, the Board issued a decision concluding that the September 1949 RO decision was clearly and unmistakably erroneous. R. at 216-22. The Board determined that the medical evidence before the RO in September 1949 showed injury to both MG III and MG IV, and that a single 30% disability rating should have been awarded under DC 5303, based on moderately severe injury to MG III in the dominant arm. R. at 221. Accordingly, the Board awarded a 30% rating under DC 5303, effective March 29, 1949. R. at 222.

After learning of Mr. Nolan's death, the Board issued a decision on February 21, 2002, vacating the September 28, 2001, decision. R. at 252-53. The Board concluded that after Mr. Nolan's death on September 10, 2001, it had been deprived of jurisdiction over his claim. *Id.* The Board issued a second decision on February 21, 2002, dismissing Mr. Nolan's appeal for lack of jurisdiction. R. at 247-49.

### B. Mrs. Nolan's Claims

In October 2001, Mildred Nolan, Mr. Nolan's surviving spouse, filed an application for dependency and indemnity compensation (DIC) benefits, death pension benefits, and accrued benefits. R. at 228-32. In January 2002, the RO issued a decision denying entitlement to accrued benefits and DIC benefits. R. at 237-42. With regard to accrued benefits, the RO stated that Mr. Nolan was not entitled to any additional benefits at the time of his death and that the September 28, 2001, Board decision was a nullity, and, therefore, did not provide a basis for an award of accrued benefits.[1] R. at 238-39. With regard to DIC benefits, the RO determined that the cause of Mr. Nolan's death was not related to military service. R. at 239-40. Mrs. Nolan filed a Notice of Disagreement as to this decision and requested review by a decision review officer. R. at 244.

A March 2002 RO decision determined that there was CUE in the September 1949 RO decision on Mr. Nolan's claim. R. at 257-63. The RO's decision was essentially in accord with the now-vacated September 28, 2001, Board decision finding CUE in the September 1949 RO decision.

---

[1] At the time of the initial RO decision in January 2002 on Mrs. Nolan's application for DIC, death pension, and accrued benefits, the Board had not yet vacated its September 28, 2001, decision.

*Compare* R. at 257-58 (March 2002 RO decision) *with* R. at 216-22 (September 2001 Board decision). The RO awarded a 30% disability rating for residuals of a gunshot wound to the right shoulder under DC 5303, effective March 29, 1949. R. at 262. The RO also awarded entitlement to a total disability rating based on individual unemployability (TDIU), effective December 13, 1999. R. at 259-60, 262. Based on this decision, the RO awarded Mrs. Nolan accrued benefits. R. at 262. The RO limited the award of accrued benefits to the two years prior to Mr. Nolan's death (September 1, 1999, through August 31, 2001). *Id.*

Mrs. Nolan requested a Statement of the Case (SOC) regarding her DIC claim and requested that accrued benefits be awarded back to September 1949. R. at 271, 285. In August 2002, the RO issued an SOC denying accrued benefits for the period prior to September 1, 1999. R. at 288-95. Also in August 2002, the RO issued a decision awarding service connection for the cause of Mr. Nolan's death and awarding DIC benefits to Mrs. Nolan. R. at 297-99.

In October 2002, Mrs. Nolan filed a Substantive Appeal to the Board seeking accrued benefits for the period dating back to September 1949. R. at 311-12. Mrs. Nolan, through attorney Robert B. Haemer, requested a hearing before the Board and presented four written arguments. R. at 319-28. First, Mrs. Nolan argued that 38 U.S.C. § 5310(a), which provides for the payment of benefits to a surviving spouse for the month of the death of a veteran, allowed for the full payment to Mrs. Nolan of the retroactive benefits Mr. Nolan was entitled to at the time of his death, rather than the two years provided for in 38 U.S.C. § 5121(a). R. at 323-24. Her theory underlying this argument was that, but for Mr. Nolan's death, he would have been paid the full retroactive award in September 2001, and, therefore, those benefits would have been paid to him in the month that he died. Second, she argued that the Board failed to follow proper procedures in vacating the September 28, 2001, decision. R. at 324-26. Specifically, she argued that she was not provided notice or an opportunity to be heard by the Board prior to the Board's February 21, 2002, decisions vacating the September 28, 2001, decision and dismissing the appeal. She argued that, in light of this error, under the Court's holding in *Bonny v. Principi*, 16 Vet.App. 504 (2002), she was entitled to the full award of benefits due to Mr. Nolan. Third, Mrs. Nolan argued that the Board was not deprived of jurisdiction over Mr. Nolan's claim upon his death. R. at 326-27. Finally, she argued that she has an equitable right to the full amount to the disability compensation due to Mr. Nolan.

4

R. at 327-28.  In November 2003, attorney Haemer personally appeared before the Board on Mrs. Nolan's behalf to present her arguments.  R. at 350-68.

On May 10, 2004, the Board issued the decision presently on appeal, rejecting each of Mrs. Nolan's arguments.  R. at 1-11.  The Board first held that Mr. Nolan's death deprived the Board of jurisdiction over his claim.  R. at 3, 6.  The Board held that 38 U.S.C. § 5310(a) applied to Mrs. Nolan in this case.  R. at 4.  However, the Board stated that her payment would be limited to the amount of "monthly" compensation that Mr. Nolan was due to receive for September 2001, and not any retroactive benefits that he would have received during that month.  R. at 5.  The Board stated that the appellant's arguments were inconsistent with 38 U.S.C. § 5121.  *Id.*  The Board held that it had proper jurisdiction to vacate its September 28, 2001, decision based on 38 U.S.C. § 7103(c), which allows the Board to "correct an obvious error in the record."  *Id.*  The Board held that the issuance of its September 28, 2001, decision after Mr. Nolan's death was an "obvious error" that the Board could correct.  R. at 5-6.

Furthermore, the Board concluded that it vacated the September 28, 2001, decision to avoid a denial of due process to Mrs. Nolan, because an adverse decision on Mr. Nolan's CUE arguments would have improperly bound Mrs. Nolan.  R. at 6.  The Board recognized that although, in this case, Mrs. Nolan actually sought to be bound by the September 28, 2001, decision, the Board lacked jurisdiction to issue a decision on Mr. Nolan's claim after his death because such action has the potential affect of violating Mrs. Nolan's due process rights.  R. at 6-7.  The Board also rejected Mrs. Nolan's *Bonny* argument, stating that *Bonny* was distinguishable because, in that case, the veteran had died after VA issued a decision awarding the benefit sought, rather than before VA issued its decision.  R. at 8-9.  Finally, the Board acknowledged the harshness of its decision and the failure by VA to award Mr. Nolan the benefits he was entitled to during his life, but rejected Mrs. Nolan's request for equitable relief, stating that it had no equitable authority to award benefits.  R. at 10.  Accordingly, the Board held that Mrs. Nolan was not entitled to accrued benefits for the period prior to September 1, 1999.  *Id.*

C.  Proceedings Before the Court

Mrs. Nolan filed a timely Notice of Appeal to this Court.  On December 17, 2004, through counsel, she filed a brief arguing for reversal of the May 2004 Board decision.  She presented a novel

5

argument to the Court regarding the interpretation of 38 U.S.C. § 5310(a). She stated that the Board's September 28, 2001, decision would have stood but for Mr. Nolan's death and, therefore, the benefits he would have received in September 2001 were the entire retroactive payment due to him as a result of the revision of the clearly and unmistakably erroneous September 1949 RO decision. Appellant's Brief (Br.) at 11-13. Citing *Bonny*, *supra*, she stated that the "ministerial delay in calculating the amount [of benefits] or sending a check lacks legal significance." *Id.* at 11. She argued that death benefits and accrued benefits are legally distinct, that she is seeking death benefits, and that the Board erred in referring to accrued benefits in rejecting her section 5310 argument. *Id.* at 13-15. She characterized 38 U.S.C. § 5310(a) as a savings clause because of the broad language describing "the amount of benefits the veteran would have received." *Id.* at 15-18. Mrs. Nolan argued that the plain, broad language of the statute conflicted with the Board's narrow interpretation of it and that the statute should be interpreted so that benefits include all benefits due for the month of death, including retroactive benefits, and not limited to only monthly benefits. *Id.* She stated that, if section 5310(a) is a savings clause, it need not be read in a manner consistent with 38 U.S.C. § 5121, the statute authorizing the payment of accrued benefits. *Id.* at 18-20. Finally, regarding accrued benefits under section 5121, Mrs. Nolan explicitly stated that "[t]his appeal is not about the award of accrued benefits paid to Mrs. Nolan for two years prior to the [v]eteran's death." *Id.* at 2.

The Secretary filed a brief asserting that the Board's decision should be affirmed. The Secretary argued that Mrs. Nolan's arguments are contrary to the plain language of section 5310(a). Secretary's Br. at 8-12. The Secretary argued that, rather than seeking benefits for the month that Mr. Nolan died, she sought benefits for the 631 months between March 1949 and September 2001. *Id.* at 8. The Secretary stated that section 5310(a) specifically provides only for the payment of benefits "for that month" in which Mr. Nolan died. *Id.* at 10-12. The Secretary also argued that Mrs. Nolan's interpretation of section 5310(a) is inconsistent with the legislative history of that section. Specifically, the Secretary stated that the purpose of section 5310(a) is to prevent the award of accrued benefits for periods of less than one month for the purpose of administrative convenience, and it was not intended to be a savings provision. *Id.* at 13-14. The Secretary also argued that *Bonny*, *supra*, is inapplicable to this case because Mr. Nolan died before the Board awarded him retroactive benefits. *Id.* at 15-16. Finally, the Secretary argued that Mrs. Nolan's interpretation of

section 5310(a) is contrary to this Court's caselaw. Specifically, the Secretary argued that the effect of her argument would be to hold that a request for revision of a prior decision on the basis of CUE survives the death of the claimant, which would be contrary to the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) holding in *Haines v. West*, 154 F.3d 1298, 1302 (Fed. Cir. 1998). *Id.* at 16.

Mrs. Nolan subsequently filed a reply brief addressing the Secretary's arguments, a motion for oral argument, and a memorandum of law addressing this Court's decision in *Mayfield v. Nicholson*, 19 Vet.App. 103 (2005), *rev'd*, 444 F.3d 1328 (Fed. Cir. 2006). The Secretary filed an opposition to the motion for oral argument and a response to Mrs. Nolan's memorandum of law addressing the Court's *Mayfield* decision.

On September 19, 2005, the Secretary filed an opposed motion to dismiss this appeal as moot. The motion states that attorney Haemer informed counsel for the Secretary that Mrs. Nolan had died. The Secretary argued that, under the Court's holding in *Landicho v. Brown*, 7 Vet.App. 42, 44 (1994), when a veteran seeking disability compensation benefits dies while his appeal is pending before the Court, substitution is not appropriate, but instead, the appropriate remedy is to vacate the Board's decision and dismiss the appeal. The Secretary further stated that in *Erro v. Brown*, 8 Vet.App. 500, 501-02 (1996), the Court held that the logic of its *Landicho* holding extends to the substitution of one dependent for another in DIC claims.

On September 21, 2005, Maureen Gage, acting pro se, filed an opposed motion to substitute herself in place of the appellant. She states that Mrs. Nolan was her mother and that substitution would be appropriate based on the Court's routine practice prior to 1994. She further asserts that the circumstances surrounding this case are unlike those in which the Court has deemed substitution inappropriate, such as in *Landicho*, *supra*. On October 6, 2005, the Secretary filed an opposition to the motion to substitute, relying on the reasoning set forth in the September 19, 2005, motion to dismiss.

On October 11, 2005, attorney Haemer filed an opposition to the Secretary's motion to dismiss. He states that the Court should exercise its discretion and grant Mrs. Gage's motion to substitute in the interest of judicial efficiency in order to "materially advance Mrs. Gage's claim for accrued benefits," because the issues involved have already been addressed by the Board and briefed

for the Court. He argues that *Landicho*, *supra*, is not controlling because the purpose of *Landicho* and its progeny is to preserve a dependent's claim by vacating an underlying adverse Board decision. In this case, he argues, vacating the underlying decision would involve vacating a decision that was partially favorable to Mrs. Nolan. Finally, he argues that *Erro*, *supra*, is not controlling because that case explicitly did not reach the issue of substitution of one dependent for another when the underlying claim is for accrued benefits rather than DIC benefits.

On February 17, 2006, the Court issued an order to the Secretary to certify to the Court whether Mrs. Gage is an eligible accrued-benefits beneficiary based on the death of Mrs. Nolan. On April 18, 2006, the Secretary responded to the Court's order stating that Mr. Nolan's claims file does not have records sufficient to certify that Mrs. Gage is Mr. Nolan's daughter. The Secretary stated that he was not concluding that Mrs. Gage was not Mr. Nolan's daughter, but that the evidence presently in the claims file was not conclusive regarding that issue. Attached to the Secretary's response are the references to Mrs. Gage in the record before the Court. *See* R. at 91 (1959 application for benefits stating that Mr. Nolan has two children, named "Maureen" and "Linda"), 178 (2001 letter from Mrs. Gage to the office of Senator Edward M. Kennedy regarding Mr. Nolan's claim), 209 (2001 cover sheet from a faxed motion to advance Mr. Nolan's appeal on the docket), 225 (Mr. Nolan's death certificate stating that "Maureen P. Gage" informed the Commonwealth of Massachusetts of Mr. Nolan's death and indicating her relationship as "daughter"); *see also* R. at 61 (1949 application stating that Mr. Nolan has one child born in 1948 named "Linda Marie").

On April 21, 2006, attorney Haemer filed a motion for leave to supplement the Secretary's response. The motion purports to provide all the evidence necessary to find that Mrs. Gage is Mr. Nolan's daughter. Attached to that motion is (1) a copy of a signed document from the City of Salem, Massachusetts, Office of City Clerk, indicating that "Maureen Nolan" was born in Salem on August 24, 1951; (2) a copy of a birth certificate for "Colleen Nolan Richard" indicating that she was born on April 24, 1982, to "Dennis Everett Richard" and "Maureen Patricia Nolan;" and (3) a certificate of marriage indicating that "Maureen Richard" and "Robert Gage" were married on May 28, 1994. Finally, the motion states that the 1949 application does not list Mrs. Gage because the application predates her birth.

8

## II. ANALYSIS

### A. 38 U.S.C. § 5121 and 38 U.S.C. § 5310

The version of 38 U.S.C. § 5121 in effect at the time Mrs. Nolan filed her claim for accrued benefits provided, in pertinent part:

> (a) . . . [P]eriodic monetary benefits . . . under laws administered by the Secretary to which an individual was entitled at death under existing ratings or decisions, or those based on evidence in the file at date of death (hereinafter in this section . . . referred to as "accrued benefits") and due and unpaid for a period not to exceed two years, shall, upon the death of such individual be paid as follows:
>
> . . . .
>
> (2) Upon the death of a veteran, to the living person first listed below:
>
> > (A) The veteran's spouse;
> > (B) The veteran's children (in equal shares);
> > (C) The veteran's dependent parents (in equal shares);
>
> (3) Upon the death of a surviving spouse or remarried surviving spouse, to the children of the deceased veteran;
>
> . . . .
>
> (5) In all other cases, only so much of the accrued benefits may be paid as may be necessary to reimburse the person who bore the expense of last sickness and burial.
>
> . . . .
>
> (c) Applications for accrued benefits must be filed within one year after the date of death.

38 U.S.C. § 5121 (2002).[2]

In *Bonny*, *supra*, the Court held that section 5121(a) created two distinct types of benefits.[3] 16 Vet.App. at 507. First, section 5121(a) provided for the award of "benefits awarded but unpaid"

---

[2] The law regarding accrued benefits has changed since the initial award in this case. First, in 2003, Congress amended 38 U.S.C. § 5121(a) to remove the two-year limitation on the payment of accrued benefits. *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 104(a), 117 Stat. 2651, 2656. This change only applies to deaths occurring on or after December 16, 2003. *See id.*, Pub. L. No. 108-183, § 104(d). Second, on the same day the Board issued the decision presently on appeal, the Federal Circuit issued a decision interpreting the language in section 5121(a) limiting the award of accrued benefits to two years to mean any two-year period during a beneficiary's life, rather than the two years immediately preceding death. *See Terry v. Principi*, 367 F.3d 1291 (Fed. Cir. 2004). However, in this case, Mr. Nolan died before December 16, 2003, and the two-year period resulting in the maximum award of accrued benefits would be the two years immediately preceding Mr. Nolan's death. Thus, neither of these changes has any effect on Mrs. Nolan's claims.

[3] In its 2003 amendment to section 5121(a), Congress deleted the comma relied upon by the Court in *Bonny* to distinguish between the two types of benefits. *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 104(c)(1), 117 Stat. 2651, 2656.

under existing ratings or decisions at the time of a claimant's death, which are not subject to a two-year limitation. *Id.* Second, section 5121(a) provided for the award of "accrued benefits," which are benefits a claimant is entitled to based on evidence in his or her claims file at the time of death, and are limited to a two-year period. *Id.* at 507-08.

The term "periodic monetary benefits" in section 5121(a) excludes one-time lump-sum payments, such as a payment for specially adapted housing. *See Papalardo v. Brown*, 6 Vet.App. 63, 65 (1993) (holding that payments for specially adapted housing are not "periodic monetary benefits" because such benefits may be paid only once). "Periodic monetary benefits" also do not include benefits that may be paid more than once, but are not paid at regular intervals, such as automobile purchase payments. *See Gillis v. West*, 11 Vet.App. 441, 442-43 (1998) (holding that automobile purchase payments cannot be claimed under section 5121 because, although such benefits may be paid more than once, payment is not made periodically, meaning at regular intervals). However, retroactive awards of disability compensation benefits are considered "periodic monetary benefits," even though the actual payment of retroactive benefits is made in a one-time lump-sum payment, because the benefits that the claimant had been entitled to receive during his or her lifetime would have been paid monthly. *See Wilkes v. Principi*, 16 Vet.App. 237, 241-42 (2002).

The definition of "children" in section 5121 is not the commonly understood definition, but rather, "child" is expressly defined in 38 U.S.C. § 101(4)(A) as a person who is unmarried and (1) under the age of 18; or (2) became permanently incapable of self-support before the age of 18; or (3) under the age of 23 and pursuing a course of instruction at an approved educational institution. *See Burris v. Principi*, 15 Vet.App. 348, 352-53 (2001).

The effective date of an award of DIC benefits, in cases where an application is received within one year of the death of a veteran, is the first day of the month in which the death occurred. *See* 38 U.S.C. § 5110(d)(1). However, 38 U.S.C. § 5310(a) may provide for an increased payment for the month the veteran dies.

> If, in accordance with the provisions of section 5110(d) of this title, a surviving spouse is entitled to death benefits under chapter 11, 13, or 15 of this title for the month in which a veteran's death occurs, the amount of such death benefits for that month shall be not less than the amount of benefits the veteran would have received under chapter 11 or 15 of this title for that month but for the death of the veteran.

38 U.S.C. § 5310(a); *see also* 38 U.S.C. § 5310(b) (discussing payments to a surviving spouse for the month of a veteran's death in cases where the surviving spouse is not entitled to benefits under chapters 11, 13, or 15 of title 38, U.S. Code). Essentially, section 5310(a) provides that, for the month that a veteran dies, a surviving spouse is entitled to receive the greater of (1) the amount of the disability compensation or pension benefits the veteran would have received for the month of death but for the veteran's death, or (2) the amount of the death benefits the surviving spouse would be entitled to for the month of the veteran's death. As the Secretary observes in his brief, only two cases have cited section 5310 and neither discuss its substantive provisions. *See Zevalkink v. Brown*, 102 F.3d 1236, 1242 (Fed. Cir. 1996) (discussing section 5310 in the context of defining the term "death benefits"); *Burris*, 15 Vet.App. at 351 (stating that benefits were awarded to the appellant under sections 5121 and 5310).

### B. *Landicho v. Brown*

Because of its status under Article I of the U.S. Constitution, this Court is not constitutionally bound by the case or controversy restraints on the judicial power of Article III courts. *See* 38 U.S.C. § 7251; *Mokal v. Derwinski*, 1 Vet.App. 12, 14 (1990). However, as a matter of policy, the Court has followed the case or controversy requirements that Article III courts are bound to follow, and has refused to decide hypothetical cases. *See Mokal*, 1 Vet.App. at 15. Thus, the Court will dismiss any case in which the controversy surrounding the appeal has become moot, meaning "there is no longer any actual controversy." BLACK'S LAW DICTIONARY 1025 (7th ed. 1999); *see Aronson v. Brown*, 7 Vet.App. 153, 155-56 (1994); *Mokal*, 1 Vet.App. at 15. Another outcome of this policy is the requirement that parties appearing before the Court have standing, meaning they must "'personally ha[ve] suffered some actual or threatened injury as a result of the putative illegal conduct.'" *Waterhouse v. Principi*, 3 Vet.App. 473, 475 (1992) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1984)).

The Court confronted both of these doctrines in the face of the death of veteran-appellants in *Landicho*, *supra*. There, the Court held that the appellants were improperly substituted to carry on the appeals of the deceased veterans in this Court and, therefore, that both appeals must be dismissed. 7 Vet.App. at 54. The Court held that a putative accrued-benefits claimant could not continue a deceased veteran's appeal for disability compensation benefits under chapter 11 of title

11

38, U.S. Code, before the Court because "absent a [Board] decision that a survivor is qualified as an accrued-benefits claimant under section 5121, any decision the Court would render on the deceased veterans' . . . claims could well be purely hypothetical." *Id.* at 49. The Court reasoned that there was no longer a case or controversy before the Court because, as to the deceased veterans, their disability compensation claims under chapter 11 died with them, and as to the appellants, who were putative accrued-benefits claimants, any claims they may have had were not before the Court. *Id.*

Turning to standing, the Court found that putative accrued-benefits claimants were not adversely affected by a prior adverse Board decision that had been appealed to the Court because the filing of a Notice of Appeal to the Court rendered the underlying Board decision nonfinal and the subsequent death of the appellant rendered the Board decision a nullity. *Id.* at 53. Because a nonfinal Board decision becomes a nullity upon the death of the appellant, the Court determined that the proper action was to vacate the underlying Board decision to ensure it has no adverse effect on the adjudication of any subsequent accrued-benefits claim, and dismiss the appeal. *Id.* at 54-55. Moreover, the Court also noted that the notification of an appellant's death is sufficient declaration of intent to seek accrued benefits, based on the death of the appellant, to raise an informal claim under 38 C.F.R. § 3.155(a). *Id.* at 50.

In *Zevalkink, supra*, the Federal Circuit upheld this Court's decision refusing to substitute an accrued-benefits claimant in the place of a deceased appellant. 102 F.3d at 1243-44. The Federal Circuit concluded that the determination of whether a party is an eligible accrued-benefits claimant involves factual findings, which this Court is prohibited from making in the first instance. *Id.* at 1244. Crucial to the Federal Circuit's holding was that no prejudice would result from the Court's refusal to substitute because the accrued-benefits claim was separate from the veteran's underlying claim. *See id.* at 1243. However, the Federal Circuit did not conclude that dismissal was an automatic remedy. Rather, the Federal Circuit stated that this Court "could perhaps remand the question of whether [a person] qualifies as an accrued[-]benefits claimant to the RO," but the Federal Circuit refused to require this Court to grant a limited remand. *Id.* at 1244. To date, the Court has never granted such a limited remand for the purpose of determining the eligibility of an accrued-benefits claimant.

The Court has extended the holding in *Landicho*. For example, in *Erro*, *supra*, the Court held that *Landicho* applied equally to appellants seeking DIC benefits. 8 Vet.App. at 501. In *Erro*, the Court refused to allow substitution of a putative child of the veteran in the place of the veteran's surviving spouse, who was pursuing a DIC claim at the time of her death. *Id.* In *Edmonds v. Brown*, 9 Vet.App. 159, 161 (1996) (per curiam order), the Court held that a child of the veteran could not seek substitution to pursue an accrued-benefits claim derivative of an asserted surviving spouse's claim for DIC benefits because there was no determination regarding whether the appellant was a surviving spouse. However, the Court has never considered the applicability of *Landicho* in cases where an appellant seeking accrued benefits or a surviving spouse seeking benefits under 38 U.S.C. § 5310 dies while an appeal is pending before the Court.

C. Substitution for Purpose of Claiming Mr. Nolan's Benefits

As the Court held in *Landicho*, *supra*, Mrs. Nolan's appeal became moot upon her death. Neither Mrs. Gage nor attorney Haemer disputes that Mrs. Nolan's appeal became moot, but they ask that the Court decline to extend *Landicho* to avoid injustice to Mrs. Gage. Specifically, they argue that the substitution of Mrs. Gage for Mrs. Nolan and the adjudication of Mrs. Nolan's appeal on the merits would materially advance the adjudication of Mrs. Gage's accrued-benefits claim. However, for the following reasons, we conclude that the case or controversy requirement adopted by this Court in *Mokal*, *supra*, prohibits substitution of Mrs. Gage for Mrs. Nolan to pursue this appeal with regard to any benefits due to Mr. Nolan at the time of his death. *See Landicho*, 7 Vet.App. at 54 (en banc Court amending Rule 43 of the Court's Rules of Practice and Procedure simultaneously with the issuance of the *Landicho* decision to allow substitution only "to the extent permitted by law").

1. *Section 5310 Claim*

We hold that Mrs. Gage does not have standing to substitute herself for Mrs. Nolan to pursue her appeal regarding any claim to benefits under 38 U.S.C. § 5310(a). Simply stated, Mrs. Gage has no legal entitlement to benefits under section 5310 in her own right. Section 5310 clearly limits its scope to surviving spouses. The RO determined that Mrs. Nolan was Mr. Nolan's surviving spouse. R. at 257. Accordingly, only Mrs. Nolan is entitled to payment of benefits pursuant to section 5310. That is, the Board's decision regarding the section 5310 claim only *personally* adversely affected Mrs. Nolan. *See Waterhouse*, *supra*.

13

The circumstances surrounding the section 5310 argument are indistinguishable from those surrounding a surviving spouse seeking the accrued disability compensation payments of a deceased veteran. Surviving spouses have no legal entitlement to receive disability compensation benefits in their own right. *See* 38 U.S.C. §§ 1110, 1131 (providing for the payment of disability compensation to veterans); *Erro*, 8 Vet.App. at 501 (stating that "*Landicho* held that a veteran's claims for benefits for a service-connected disability contained in chapter 11 of title 38 of the U.S. Code die with the veteran; a veteran's survivors may have a claim for benefits under chapter 13 of title 38, but these claims are different from those of the veteran"). The only means by which Mrs. Gage potentially may obtain any benefits that Mrs. Nolan was entitled to at the time of her death under section 5310 is through an accrued-benefits claim pursuant to section 5121.

## 2. Section 5121 Claim

We do not reach the issue of Mrs. Gage's standing to substitute herself in the place of Mrs. Nolan to pursue a claim under 38 U.S.C. § 5121. Rather, for the following reasons, we hold that the claim for accrued benefits, based upon any benefits that Mr. Nolan was entitled to at the time of his death, is moot.

In her principal brief, Mrs. Nolan, through her attorney, clearly and unambiguously stated that she was seeking benefits pursuant to 38 U.S.C. § 5310(a) and not accrued benefits pursuant to 38 U.S.C. § 5121. Appellant's Br. at 2 ("This appeal is not about the award of accrued benefits paid to Mrs. Nolan for two years prior to the Veteran's death based on the evidence in the record."). Generally, issues not raised in the appellant's principal brief are deemed abandoned on appeal. *See Ford v. Gober*, 10 Vet.App. 531, 535-36 (1997); *Degmetich v. Brown*, 8 Vet.App. 208, 209 (1995), *aff'd* 104 F.3d 1328 (Fed. Cir. 1997). Although attorney Haemer is correct, in stating in his opposition to the Secretary's motion to dismiss, that *Landicho* and *Erro*, both *supra*, do not reach the issue of the substitution of one accrued-benefits claimant for another, in this case, there is no accrued-benefits claim pending before the Court because of Mrs. Nolan's explicit waiver of the issue in her principal brief. Accordingly, this case is not about the substitution of one accrued-benefits claimant for another. When Mrs. Nolan explicitly abandoned any accrued-benefits arguments in her brief, the Board's decision regarding entitlement to additional accrued benefits became final and any controversy regarding entitlement to additional accrued benefits was mooted by that choice.

14

In her brief, Mrs. Nolan refers to the Court's decision in *Bonny*, *supra*. Appellant's Br. at 11-12. However, we observe that there were no "benefits awarded but unpaid" at the time of Mr. Nolan's death because the decision awarding him retroactive disability compensation benefits was made *after* his death. Therefore, there were no "existing ratings or decisions" at the time of his death awarding him retroactive disability compensation, and Mrs. Nolan was not entitled to "benefits awarded but unpaid" at the time of Mr. Nolan's death. 38 U.S.C. § 5121(a).

Our holding is limited to the facts presented in this case and cannot be read to prohibit substitution in cases where an appellant seeking accrued benefits dies while an appeal as to that claim is pending before this Court. Such a scenario presents the potential for prejudice that is not present in this case and that was not present in *Landicho*. Specifically, the requirement that an accrued-benefits claim be filed within one year of death would bar an appellant's survivors from filing an accrued-benefits claim based on the veteran's entitlements because it generally takes more than one year for a claim to reach this Court. *See* 38 U.S.C. § 5121(c). Because such a scenario is not present in this case, we explicitly leave open the question of the proper procedure when an accrued-benefits claimant dies while pursuing that claim and a second putative accrued-benefits claimant seeks substitution before the Court.

Our decision also should not be read as a determination regarding whether Mrs. Gage is eligible to receive accrued benefits, or the merits of any accrued-benefits claim that she might pursue at the RO. *See Zevalkink*, 102 F.3d at 1244 (stating that a determination of eligibility under section 5121 "necessarily involves fact finding" and that this Court cannot properly make such a determination in the first instance). We hold only (1) that Mrs. Nolan had abandoned an appeal of the Board's decision on her claim for accrued benefits under section 5121, (2) that her appeal as to additional benefits under section 5310 became moot upon her death, and (3) that Mrs. Gage may not substitute herself in the place of Mrs. Nolan to pursue a claim under section 5121 for benefits due to Mr. Nolan at the time of his death.

D. Substitution for Purpose of Claiming Mrs. Nolan's Benefits

We next turn to the resolution of the issue of substitution for the purpose of claiming accrued benefits due to Mrs. Nolan. We hold that when a surviving spouse seeking benefits under 38 U.S.C. § 5310 dies while an appeal is pending before the Court, the circumstances are indistinguishable

15

from those present in *Landicho*, as discussed in *Erro*, *supra*. Accordingly, the proper resolution of the appeal is to vacate the underlying Board decision and dismiss the appeal. There is no prejudice to Mrs. Gage in requiring that she establish herself before VA as an eligible accrued-benefits claimant. There is no reason for attorney Haemer to be concerned that applying *Erro* and *Landicho* would result in the vacatur of decisions favorable to Mrs. Nolan. Because the Court is vacating the Board decision only as to the matter on appeal (entitlement to retroactive benefits under 38 U.S.C. § 5310), to the extent the RO and Board decisions were favorable to Mrs. Nolan, those decisions remain undisturbed. *See, e.g.,* R. at 257-63 (awarding entitlement to accrued benefits based on a finding that the September 1949 RO decision was clearly and unmistakably erroneous), 297-99 (granting service connection for the cause of Mr. Nolan's death and awarding DIC benefits). However, the Board's decision as to the section 5310 matter on appeal will have no binding effect on the adjudication of an accrued-benefits claim. *See Landicho*, 7 Vet.App. at 52. Because the RO decisions underlying the Board decision were subsumed in the Board decision on appeal, those decisions also will have no binding effect on an accrued-benefits claim. *See Yoma v. Brown*, 8 Vet.App. 298, 299 (1995) (per curiam order).

As stated above, because Mrs. Gage is clearly not Mr. Nolan's surviving spouse, she has no entitlement in her own right to benefits under 38 U.S.C. § 5310. Accordingly, the only potential manner by which she can recover any benefits Mrs. Nolan was entitled to at the time of her death under section 5310 at the time of her death is through a claim for accrued benefits under section 5121. We, of course, express no view either on the merits of any claim for accrued benefits due to Mrs. Nolan, or on Mrs. Gage's eligibility to collect any such benefits, including whether Mrs. Gage qualifies as a "child," as defined in 38 U.S.C. § 101(4), such that she could collect more than the expenses for Mrs. Nolan's final illness and burial, and whether any potential benefits that Mrs. Nolan was entitled to under 38 U.S.C. § 5310 may be awarded in a claim for accrued benefits under 38 U.S.C. § 5121. *See Wilkes*, *Burris*, *Gillis*, and *Papalardo*, all *supra*. We observe that an informal claim for accrued benefits is pending before VA as a result of Mrs. Gage's motion to substitute herself in place of the appellant, and we leave these questions to VA to decide in the first instance in the course of the adjudication of Mrs. Gage's accrued-benefits claim. *See Landicho*, 7 Vet.App. at 50.

## III. CONCLUSION

On consideration of the foregoing, the Secretary's September 19, 2005, motion to dismiss this appeal is granted. The Board's May 10, 2004, decision is VACATED as to the matter appealed to the Court (entitlement to retroactive benefits under 38 U.S.C. § 5310) and this appeal is DISMISSED. Mrs. Gage's September 21, 2005, motion to substitute is denied. The motion for oral argument is denied. *See Winslow v. Brown*, 8 Vet.App. 469, 471 (1996) (denying motion for oral argument where Court did not believe it would materially assist in disposition of appeal). Attorney Haemer's April 21, 2006, motion for leave to supplement the Secretary's response is denied as moot, however a copy of the documents attached to that motion should be associated with Mrs. Gage's pending claim for accrued benefits.

KASOLD, *Judge*, concurring in the result: I write separately to highlight the fact that substitution of an accrued-benefits beneficiary for a deceased appellant may be appropriate when the beneficiary has a personal stake in the outcome of the litigation. *See Redding v. West*, 13 Vet.App. 512, 514 (2000) ("[I]n order for an appellant to have standing, that individual must demonstrate that he or she has been injured and has a 'personal stake in the outcome of the controversy.'" (citation omitted)); U.S. VET. APP. R. 43. When benefits have been denied as a matter of law, as they were in this appeal, an accrued-benefits beneficiary has a personal stake in the outcome of that legal issue and there is no reason to require the beneficiary to undertake a meaningless and time-consuming journey through the entire claims process below only to have the issue ultimately resolved in a subsequent appeal to the Court. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (Court reviews Board's interpretation of law de novo); *Tobler v. Derwinski*, 2 Vet.App. 8, 14 (1991) (Court's interpretation of law is binding on the Board); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996) (stating that this Court could issue a limited remand to determine whether a person qualifies as an accrued-benefits claimant); *cf. Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (citations omitted).

17

Of course, in cases like this, accrued-benefits-beneficiary status is a prerequisite to granting substitution. In this instance, there exists a factual dispute over the status of Ms. Gage as an accrued-benefits beneficiary, the resolution of which might resolve the entire matter, at least as it pertains to this case. Accordingly, I concur in the dismissal of the appeal.