The AMERICAN LEGION, Petitioner,

v.

R. James NICHOLSON, Secretary of
Veterans Affairs, Respondent.

No. 06–3264.

United States Court of Appeals
for Veterans Claims.

Argued Dec. 6, 2006.

Decided Jan. 5, 2007.

Barton F. Stichman, with whom Louis J. George was on the brief, both of Washington, D.C., for the Petitioner.

Brian B. Rippel, with whom Tim S. McClain, General Counsel, and R. Randall Campbell, Assistant General Counsel, were on the brief, all of Washington, D.C., for the Respondent.

Before GREENE, Chief Judge, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and SCHOELEN, Judges.

GREENE, Chief Judge:

Before the Court is The American Legion's petition for extraordinary relief in the nature of a writ of mandamus. The American Legion maintains that the Secretary, through the Chairman of the Board of Veterans' Appeals (Board Chairman), acted unlawfully and in violation of the Court's decision in *Ramsey v. Nicholson*, 20 Vet.App. 16 (2006), when the Board Chairman issued Memorandum 01–06–24 (Sept. 21, 2006) [hereinafter Chairman's Memo.], which implemented a directive by the Secretary to "stay action on and refrain from remanding all claims for service connection based on exposure to herbicides in which the only evidence of exposure is receipt of the Vietnam Service Medal or service on a vessel off the shore of Vietnam." Petition (Pet.) at 1. The purpose of the Chairman's Memorandum is to stay adjudication of these cases until it is rescinded, or until the VA Office of General Counsel provides advice and instructions to the Board upon resolution of the ongoing litigation in *Haas v. Nicholson*, 20 Vet.App. 257 (2006), *appeal docketed*, No. 07–7037 (Fed.Cir. Nov. 2, 2006). *See* Pet., Exhibit A at 2; *see also* Chairman's Memo. at 1.

The American Legion's petition seeks a Court order directing the Secretary to (1) rescind the stay of proceedings imposed by the Chairman's Memorandum, and (2) order the Board of Veterans' Appeals (Board) to decide *Haas*-like cases forthwith. Pet. at 9. The Secretary filed a response to the petition asserting, inter alia, that The American Legion does not have standing to bring the petition. In response, The American Legion asserts it has standing because it satisfies the three-prong test for associational standing set forth in *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). That test requires an association to show that "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief re-

quested requires the participation of individual members in the lawsuit." *Id.*

On November 14, 2006, the matter was referred to a full-Court panel for oral argument and disposition. The Court also directed the parties to provide additional memoranda of law to address (1) the third element of the associational standing test—that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit, and (2) how and on what basis The American Legion, or any veterans service organization (VSO), has standing to petition the Court under the All Writs Act (AWA), 28 U.S.C. § 1651(a). The Court heard oral argument on December 6, 2006. For the reasons set forth below, the petition will be dismissed.

### I. THE PARTIES' ARGUMENTS

The American Legion contends that it has standing as a Petitioner because it satisfies the three-prong test for associational standing as follows: (1) It has more than 2.6 million members who are former members of the U.S. Armed Forces, some of whom have claims pending before the Board that are subject to the stay challenged in the petition; (2) one of its organizational purposes is protecting veterans' rights to VA benefits; and (3) the relief sought is prospective and equitable in nature, and the remedy, if granted, would " 'inure to the benefit of those members of the association actually injured.' " Petitioner's Memorandum of Law (Memo. of Law) at 8–10 (quoting *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434). The American Legion also argues that because the third element of the associational standing test is purely prudential and a matter of judicial efficiency, *see United Food & Commer. Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 558, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996), its request for equitable relief pursuant to the AWA does not implicate the prudential interests protected by the third prong of the test. Memo. of Law at 4–5.

In response, the Secretary argues that *Hunt,* and its progeny, permit associational standing only when such standing has not been proscribed by statute and the three-prong test is satisfied. Secretary's Memo. of Law at 2. The Secretary does not contest that The American Legion satisfies the first two prongs of the associational standing test. Rather, the Secretary asserts that because the Court's jurisdiction is limited to review of final Board decisions and only a "person adversely affected" by that Board decision may file an appeal with the Court, the statutes governing the Court's jurisdiction exclude the type of associational standing asserted by The American Legion, and require the participation of individual claimants in all actions before the Court. *Id.* at 10; *see* 38 U.S.C. §§ 7252 and 7266(a). The Secretary maintains that the AWA permits the Court to issue extraordinary writs only in aid of its prospective jurisdiction, but may not expand that jurisdiction. Therefore, because The American Legion could never appeal an adverse Board decision regarding the entitlement to benefits under the laws administered by the Secretary, similarly, it is not a proper party to bring a petition pursuant to the AWA.

### II. LAW AND ANALYSIS

In 1989, Congress established this Court under Article I of the U.S. Constitution to provide our nation's veterans and their families with independent judicial review of Board decisions. As an Article I Court, we are not constitutionally bound by the case or controversy restraints of Article III courts. *See* 38 U.S.C. § 7251; *Mokal v. Derwinski,* 1 Vet.

App. 12, 14 (1990); *see also Nolan v. Nicholson,* 20 Vet.App. 340, 348–49 (2006). We have held, however, that as a matter of policy, we "will adhere to the case or controversy jurisdictional restraints adopted by Article III courts." *Mokal,* 1 Vet.App. at 13. It does not necessarily follow, though, that, by adhering to the case or controversy restraints of Article III courts, we are thus bound to apply the doctrine of associational standing in this Court as argued by The American Legion. Based on the following, we hold that, because Congress did not intend for this Court's jurisdiction to expand beyond addressing appeals filed by individual claimants adversely affected by final Board decisions, we are not permitted to go beyond the jurisdictional statute set forth by Congress and allow for associational standing.

### A. 38 U.S.C. §§ 7252(a) and 7266(a)

The Court's jurisdiction is governed by 38 U.S.C. §§ 7252(a) and 7266(a). Pursuant to section 7252(a), this Court "shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." Further, section 7266(a) specifically states that only a *"person adversely affected* by such decision shall file a notice of appeal" with the Court. 38 U.S.C. § 7266(a) (emphasis added). Although the plain language of this statute clearly indicates that Congress granted a right of action to a "person adversely affected" by a final Board decision, the meaning of "person" as used in this section is not defined in title 38, nor has the Secretary provided any regulatory definition. Thus, we will review the statutory scheme and the legislative history of the Veterans Judicial Review Act (VJRA), Pub.L. 100–687, title III, sec. 301, 102 Stat. 4113, to determine whether, as the Secretary suggests, Congress expressed an intent to limit the exercise of the Court's jurisdiction. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221,

112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (when interpreting a statute, the Court is required to look at the context and the provisions of law as a whole); *see also Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456, 1456 (Fed.Cir.1993), *aff'd,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION 46:05 (6th ed.2000) ("each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole" and a "court will not only consider the particular statute in question, but also the entire legislative scheme of which it is a part").

### 1. Legislative History of the VJRA

The legislative history of the VJRA reveals that when Congress initially considered providing judicial review for veterans, its focus was on the individual right of the veteran or claimant to seek review of a final Board decision. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (noting that discerning Congress's intent can be accomplished by reviewing the legislative history of a statute). Specifically, when Senator Alan Cranston of California introduced Senate Bill 11, Veterans' Administration Adjudication Procedure and Judicial Review Act, to the full Senate in 1987, he stated that the basic purpose of the proposed legislation was to "ensure that veterans and other claimants before the VA [would] receive all benefits to which they are entitled under law by providing them with the opportunity for judicial review of final decisions of the Administrator of Veterans' Affairs, or those acting for him." 133 CONG. REC. S 223 (daily ed. Jan. 6, 1987). Further, he noted that judicial review would "ensure

fairness to *individual claimants* before the VA." *Id.* (emphasis added).

The legislative intent to limit review in this Court to final Board decisions on appeals of individual claimants is also evident from Senator Cranston's testimony before the U.S. Senate Committee on Veterans' Affairs. On April 28, 1988, he described Senate Bill 11 as legislation that would "provide an opportunity for a veteran to seek judicial review of a final decision of the Board." *United States Senate Legislative Hearing on S. 11—"Veteran's Administration Adjudication Procedure and Judicial Review Act"* and "S. 2292—Veteran's Judicial Review Act," 100th Cong. (1988). Senator Cranston reiterated the importance of ensuring "fairness to *individual* claimants before VA" and the need for review of "questionable agency actions restricting, withholding, or withdrawing VA benefits." *Id.* (emphasis added). Senator Cranston stated that "if the *veterans directly affected* by various VA actions have access to [a] court to challenge these actions, they would be guaranteed the opportunity to be heard by an entity outside of the VA and, in certain cases, to obtain urgent and timely relief." *Id.* (emphasis added). Following the Senate's consideration of both bills, Senator Cranston again appeared before the full Senate to present the compromise agreement, Senate Bill 11. *See* 134 CONG. REC. S9184 (daily ed. July 11, 1988). In outlining the procedure for judicial review, Senator Cranston noted that "judicial review would be available *only* after a *veteran's claim* has been turned down by a VA regional office and, on appeal, by the Board." *Id.* (emphasis added). Notably absent from the legislative history of the VJRA is any expression of intent to allow VSOs to seek judicial review in their own right on behalf of their members through appeal to this Court. Rather, Congress clearly outlined the role VSOs would continue to play in the VA

adjudicative processes in other statutory provisions that are outlined below, particularly, the statutory provisions governing filing an appeal with the Board and the Court, as well as filing challenges to VA rulemaking exclusively with the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).

### 2. Appeals to the Board

An appeal to the Board of a VA regional office (RO) decision is initiated by filing a Notice of Disagreement (NOD) and is completed by filing a Substantive Appeal. *See* 38 U.S.C. § 7105(a). When a claim is properly appealed to the Board, the Board is vested with the jurisdiction to review "[a]ll questions in a matter which under section 511(a) of [title 38] is subject to a decision of the Secretary." 38 U.S.C. §§ 7104(a), 7105(a); *see also Jarrell v. Nicholson,* 20 Vet.App. 326, 331 (2006) (en banc); *Bernard v. Brown,* 4 Vet.App. 384, 390–91 (1993). An RO decision can only be appealed to the Board through the timely filing of an NOD by "the claimant, the claimant's legal guardian, or such accredited representative, attorney, or authorized agent." 38 U.S.C. § 7105(b)(2). Section 5100 of title 38, U.S.Code, defines "claimant" as "any *individual* applying for, or submitting a claim for, any benefit under the laws administered by the Secretary." *Jarrell,* 20 Vet.App. at 330 (emphasis added); *see also* 38 U.S.C. § 5100. When a claim is withdrawn by the person seeking benefits it "ceases to exist." *Hanson v. Brown,* 9 Vet.App. 29, 32 (1996). Hence, without a potential beneficiary, there is nothing to pursue.

Based upon the foregoing, we conclude that "claimant" as used in section 7105(a) is the individual applicant seeking to appeal a decision of a claim for a VA benefit under title 38. Similarly, for a compensation claim under 38 U.S.C. § 1110, only a

person asserting entitlement to benefits under title 38 can be a claimant/appellant for purposes of section 7105(a). *See* 38 C.F.R. § 20.301 (2006) (stating that an NOD or a Substantive Appeal may only be "filed by a claimant personally, or by his or her representative if a proper Power of Attorney or declaration of representation, as applicable, is on record"). Therefore, the Board does not have jurisdiction to consider an appeal by The American Legion seeking benefits on behalf of its individual members. *See Jarrell,* 20 Vet.App. at 334 (dismissing appeal from adverse Board decision where Board initially lacked jurisdiction to decide the matter).

### 3. Congress's Defined Role for VSOs

Congress expressly created, under 38 U.S.C. § 5902, a specific, limited role for The American Legion within the VA adjudication process. That provision identifies The American Legion by name as a VSO entitled to act "as the claimant's representative." 38 U.S.C. § 5902(c). Given that Congress has explicitly defined The American Legion as having the power to *represent* claimants, it would be inconsistent with the plain language and legislative history of 38 U.S.C. § 7266 to find that Congress also intended to provide VSOs authority to independently pursue appeals before the Board or the Court. *See* 38 U.S.C. § 5902(b) (setting forth specific requirements for VSO to provide representation before the Secretary); *see also Meeks v. West,* 12 Vet.App. 352, 354 (1999) (" '[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.' " (quoting 2A N. Singer, Sutherland on Statutory Construction § 46.01 (5th ed.1992))).

We also observe that, at approximately the same time Congress established this Court's jurisdiction, it also considered and later explicitly provided to the Federal Circuit exclusive jurisdiction to hear challenges concerning VA rulemaking. *See* 38 U.S.C. § 502. In drafting this statute, Congress clearly set forth the role of the VSOs in this process. Specifically, 38 U.S.C. § 502 provides:

An Action of the Secretary to which section 552(a)(1) or 553 of title 5 (or both) refers ... is subject to judicial review. Such review shall be in accordance with chapter 7 of title 5 and may be sought only in the United States Court of Appeals for the Federal Circuit. However, if such review is sought in connection with an appeal brought under the provisions of chapter 72 of this title, the provisions of that chapter shall apply rather than the provisions of chapter 7 of title 5.

Chapter 7 of title 5 sets forth the procedure for judicial review under the Administrative Procedure Act. Section 702 provides that "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The definitions set forth in 5 U.S.C. § 551 apply to the provisions of 5 U.S.C. § 702; therefore, a "person" under section 702 includes an "individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2); *see* 5 U.S.C. § 701. Thus, Congress established that an association such as a VSO, under 38 U.S.C. § 502, would have standing to raise a challenge in its own right before the Federal Circuit, without regard as to whether it met the criteria for the associational standing test. We conclude that by specifically designing the statute to address the role of the VSOs, Congress intended VSOs to have standing in their own right before the Federal Circuit and not this Court. Congress has limited the role of the VSOs

before this Court, and the Board, to act only as representatives authorized to assist individual claimants pursuing their appeals of adverse VA decisions, and not as a proper "party" that may appeal to the Board and thereafter the Court. This conclusion is further supported by the fact that the Federal Circuit, this Court, and VA have repeatedly recognized that a "person adversely affected by a [final Board decision]" is the individual claimant that initiated the claim before VA and ultimately continued an appeal of VA's decision on that claim to the Court. *See Landicho v. Brown*, 7 Vet.App. 42 (1994) (holding that when a veteran dies while an appeal of the denial by the Board of his or her claim for disability compensation under chapter 11 of title 38, U.S.Code, is pending, the appropriate remedy is to vacate the Board decision from which the appeal was taken and to dismiss the appeal); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1243–44 (Fed.Cir.1996) (upholding this Court's decision refusing to substitute an accrued-benefits claimant in the place of a deceased appellant); *Nolan*, 20 Vet.App. at 349–50 (denying daughter's motion to substitute herself and pursue her deceased mother's appeal for accrued benefits before the Court, noting that in order to have standing in this Court, parties must "personally ha[ve] suffered some actual or threatened injury as a result of the putative illegal conduct"); *cf.* 38 C.F.R. § 20.3(g) (2006) (defining "claimant" as a "person who has filed a claim"); 38 C.F.R. § 20.301 (stating that an NOD or a Substantive Appeal may only be "filed by a claimant personally, or by his or her representative if a proper Power of Attorney or declaration of representation, as applicable, is on record").

### B. AWA Authority

■ Although The American Legion argues that the AWA does not impede its ability to establish associational standing, we conclude otherwise because the AWA is limited by our jurisdictional statute. Pursuant to the AWA, the Court has the authority to issue extraordinary writs *in aid of its prospective jurisdiction.* 28 U.S.C. § 1651(a). "[J]urisdiction to issue a writ of mandamus pursuant to the AWA relies upon not *actual* jurisdiction but *potential* jurisdiction." *In re Fee Agreement of Cox*, 10 Vet.App. 361, 370 (1997) (*Fee Agreement of Cox I*), *vacated on other grounds*, 149 F.3d 1360 (Fed.Cir.1998) (*Fee Agreement of Cox II*) (emphasis in original). This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress as outlined above and may not be extended beyond that permitted by law. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Indeed, "we must construe jurisdictional statutes narrowly and 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Bailey v. West*, 160 F.3d 1360, 1363 (Fed.Cir.1998) (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968)). Thus, the Court has jurisdiction to issue a writ of mandamus only if granting the petition could lead to a final Board decision for the petitioner over which the Court would have jurisdiction. *See Fee Agreement of Cox II*, 149 F.3d at 1363. In this case, The American Legion does not have standing to obtain the relief sought on behalf of all of its potentially affected members because it could not, in its own right, obtain such a final Board decision.

■ The Federal Circuit's analysis in *Reid v. Dep't of Commerce*, 793 F.2d 277, 278 (Fed.Cir.1986) is also instructive. The result in this case would be the same as in *Reid*—The American Legion would not have standing. Given the limiting lan-

guage of our jurisdictional statutes, we would conclude that Congress has exercised its legislative prerogative to impose a prudential limitation on the exercise of our jurisdiction over adverse decisions of the Board, and as such, The American Legion has not met the third criterion of the associational standing test.

To reach this conclusion, we recognize that while the first two prongs of the test are required under Article III of the U.S. Constitution, the Supreme Court has held that the third prong of the test is not constitutional in nature, but rather one developed in the interest of administrative convenience and efficiency; and, thus, as a prudential rule "of judicial self-governance," Congress may revoke this last requirement by statute. *United Food & Commer. Workers Local 751*, 517 U.S. at 558, 116 S.Ct. 1529 (noting that union could establish associational standing regardless of third requirement because Congress had specifically authorized unions to sue for its members' damages). Indeed, as the Federal Circuit observed in *Reid*,

> [w]here the actual or threatened injury required by Article III exists solely by virtue of statutes creating legal rights which have been invaded, the standing question depends on whether the statutory provision on which the claim rests properly can be understood as granting persons in the litigant's position a right to judicial relief.

793 F.2d at 280 n. 7 (citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

In *Reid*, the Federal Circuit concluded that a union's standing to appeal a Merit Systems Protection Board (MSPB) determination to the Federal Circuit was predicated on the union's having standing before the MSPB. *Id.* at 283. In reaching its conclusion, the Federal Circuit examined the plain language of the statutes involved and found that Congress's use of the word "employee" instead of "person," and the separate statutory definitions for both terms indicated that by using "employee" in the jurisdictional statute for pursuing appeals of adverse decisions of the MSPB, Congress had "exercised its legislative prerogative to impose a prudential limitation on the exercise of [the Federal Circuit's] jurisdiction over adverse decisions of the MSPB." 793 F.2d at 283–84. On this basis, the Federal Circuit concluded that Congress intended that only individual employees pursue an appeal from MSPB determinations, and, therefore, the third prong of the *Hunt* associational standing test was not satisfied. *Id.* The same is true here. Congress clearly intended that only individuals adversely affected by a final Board decision appeal to the Court. Therefore, Congress has acted to "impose a prudential limitation" on the exercise of our jurisdiction, just as it did in establishing the Federal Circuit's jurisdiction over MSPB determinations.

## III. CONCLUSION

Upon review of the plain text of the statute, along with the statutory scheme of title 38, and the legislative history of the VJRA, we conclude that Congress has expressly limited our jurisdiction to addressing only appeals and petitions brought by individual claimants. Therefore, although The American Legion's petition for extraordinary relief asks the Court to resolve a purely legal issue, granting a VSO standing, even in the context of the AWA, would impermissibly expand our jurisdiction beyond that which Congress intended. Because The American Legion lacks standing to bring an appeal from an adverse Board decision to the Court, it similarly lacks standing to bring a petition because a decision on that matter would not aid in our

jurisdiction over The American Legion. The American Legion's pleadings in this matter are accepted as amicus curiae in *Ribaudo v. Nicholson,* U.S. Vet.App. No. 06–2762 (Argued Dec. 6, 2006).

Accordingly, upon consideration of the foregoing, the petition for extraordinary relief in the nature of a writ of mandamus is DISMISSED.

KASOLD, *Judge,* dissenting:

I respectfully submit that the majority confuses the extent of our appellate jurisdiction with our authority under the All Writs Act to exercise our judicial authority in aid of our appellate jurisdiction. *Compare* 38 U.S.C. §§ 7252, 7266 (Court jurisdiction and review authority) *with* 28 U.S.C. § 1651(a) (All Writs Act). The Court's appellate jurisdiction is limited to reviewing Board decisions initiated by persons adversely affected by those decisions. *See* 38 U.S.C. §§ 7252(a), 7266(a). This is not, however, exclusive of our well-established authority to grant extraordinary relief in aid of our jurisdiction pursuant to the All Writs Act, a power the Court has had since its inception. *See* 28 U.S.C. § 1651(a); *Erspamer v. Derwinski,* 1 Vet. App. 3, 6 (1990) ("Congress specifically provided that this court would 'have such assistance in carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States.' 38 U.S.C.A. § 4065(b) (West Supp.1989). Moreover, it is clear that Congress intended that this court have and, in appropriate instances, use jurisdiction under the All Writs Act."); *In re Quigley,* 1 Vet.App. 1 (1989) ("The Court, having been 'established by Act of Congress,' has [authority] to act 'in aid of [its] ... jurisdiction[ ]' pursuant to the All Writs Act....").

It is axiomatic that the Court may not use its authority under the All Writs Act to expand its appellate jurisdiction. *See Pa. Bureau of Corr. v. U.S. Marshals Serv.,* 474 U.S. 34, 41, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985); *see also* 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3932, p. 470 (2d ed. 1996) ("The All Writs Act ... is not an independent grant of appellate jurisdiction."); 19 J. MOORE & G. PRATT, MOORE'S FEDERAL PRACTICE § 204.02[4] (3d ed. 1998) ("The All Writs Act cannot enlarge a court's jurisdiction."). However, this does not, and cannot, mean that our judicial authority is not enhanced by legislation granting us authority to issue writs in aid of our jurisdiction under the All Writs Act. *See Carlisle v. United States,* 517 U.S. 416, 429, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996) (" 'The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.' " (quoting *Pa. Bureau of Corr.,* 474 U.S. at 43, 106 S.Ct. 355)); *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1379 (11th Cir.1998) (holding that the All Writs Act does not provide an independent basis for supplemental Federal jurisdiction in situations where "[F]ederal jurisdiction is otherwise wholly lacking"); *see also* 19 MOORE'S FEDERAL PRACTICE § 201.40 ("[A] writ may not be used ... when another method of review will suffice."). After all, it is the All Writs Act that gives the Court the authority to issue the very injunctive relief sought by the petitioner. *See Wis. Right to Life, Inc. v. Fed. Election Comm'n,* 542 U.S. 1305, 1306, 125 S.Ct. 2, 159 L.Ed.2d 805 (2004) (REHNQUIST, C.J., in chambers) ("The All Writs Act, 28 U.S.C. § 1651(a), is the only source of this Court's authority to issue such an injunction."); *Erspamer* and *Quigley,* both *supra.*

Inasmuch as we have the authority to grant the requested relief, the only question is whether the petitioner has standing

to seek that relief. The American Legion does not seek to appeal a Board decision. Rather, The American Legion petitions the Court for extraordinary relief on behalf of its members through the exercise of our authority under the All Writs Act. The fact that The American Legion cannot bring an appeal on any of the underlying claims does not deprive the Court of the authority to hear its petition. Most associational standing cases involve injunctive relief in situations where the association could not assert for itself any of the underlying claims or bring an appeal of an adverse decision on those claims. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 126 S.Ct. 1297, 1303 & n. 2, 164 L.Ed.2d 156 (2006) (associational standing recognized for an association of law schools and law faculties that could not claim entitlement to the Federal funds at issue); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 288–89, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (associational standing of employee union to sue on behalf of its affected members in Federal court even though the union could not recover for itself the underlying benefits payable to workers who were laid off due to competition from imports); *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342–46, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) (associational standing recognized for a state agency, even though it had no members and could assert "no more than an abstract concern for the well-being" of the industry); *see also Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986) ("actions for declaratory, injunctive *and other forms of prospective relief* have generally been held particularly suited to group representation" (emphasis added)).

Moreover, the majority's reliance on *Reid v. Dep't of Commerce*, 793 F.2d 277 (Fed.Cir.1986), is misplaced, as that case is inapposite to the situation here. Unlike *Reid*, the instant case does not involve an appeal decision of a lower tribunal. It involves the legality of an order by the Secretary to stay the processing of cases, where such stay impacts the Court's jurisdiction to hear appeals by affected veterans. The exercise of our authority would not involve the merits of a Board decision; it involves only consideration of the legality of the order pursuant to our All Writs Act authority, and the possible exercise of that authority.

The majority also misunderstands the third prong of the associational standing test, which serves to deny associational standing when "the claim asserted [or] the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434. In this case, as noted, the only issue is the purely legal question of whether the Secretary or the Board Chairman have the authority to stay the processing of cases at the Board; the particular facts and merits of the individual cases stayed pursuant to the Secretary's order are not relevant. Thus, the third prong is fully satisfied because participation of individual members is not required.

Finally, the majority finds congressional intent to exclude associational standing, but fails to recognize this arises from and extends solely to legislative history and statutes addressing our authority to hear appeals from Board decisions. None of the legislative history or statutory analysis cited by the majority addresses associational standing in the context of a request for an exercise of our authority under the All Writs Act. In contrast, the Supreme Court has noted that associational standing generally has been found appropriate in cases where injunctive relief, such as that granted pursuant to All Writs Act

authority, is sought—as is the case here. *See Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *see also Camel Hair & Cashmere Inst., Inc., supra.* In sum, we have the authority to hear the petition and, if warranted, to grant it, and The American Legion has standing to bring it. There are no legal, prudential, or other cogent reasons to dismiss this case for lack of standing. Accordingly, I respectfully dissent.

HAGEL, *Judge,* dissenting:

I respectfully dissent from the conclusion reached by the majority opinion regarding whether The American Legion has standing to represent its members in seeking a writ of mandamus from this Court. Although I agree with the legal analysis of Judges Kasold and Schoelen and agree with their conclusion that The American Legion has standing to petition the Court in this case, I write separately to emphasize what I believe are the very limited circumstances that would support such standing.

The majority considers whether an association may assert standing on behalf of its members, focusing on 38 U.S.C. §§ 7252 or 7266, and whether an association could ever be a party before the Court challenging a Board decision. However, such an inquiry is not before the Court. The current situation is much more narrow. The American Legion, on behalf of its members, is seeking a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), a form of purely legal relief. Such relief is prospective, equitable, not dependent on the individual circumstances of its members' underlying appeals, and, if granted, would apply uniformly to all affected members. The American Legion is not attempting to establish associational standing in its own right, but to act on behalf of its individual members in resolv-

ing their appeals which are currently pending before the Board. This situation does not implicate 38 U.S.C. §§ 7252 or 7266. In this unique and narrow situation, neither the legal questions presented nor the nature of relief requested requires participation of individual members for proper consideration and resolution. *See Int'l Union United Auto., Aerospace, & Agric. Implement Workers of Am. v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986). Where a lawsuit raises a question of pure law, as is the case here, regarding whether the Secretary may impose a stay on cases pending before the Board without first obtaining approval by this Court, so long as its members would have standing to sue in their own right, individual members are not required to participate in the lawsuit. *Id.* This case undoubtedly presents a pure question of law.

The American Legion asks the Court to declare unlawful an action by the Secretary that postponed indefinitely the adjudication of the claims of a number of The American Legion's members, thus affecting the potential jurisdiction of this Court over such claims. This relief is common to all of the association's members affected by the Chairman's order. Further, the factors that would determine whether such relief should be granted or denied are totally independent of the individual circumstances of the underlying claims. Because the relief sought by The American Legion is equitable in nature and not dependent on the individual circumstances of its members' underlying appeals, individual participation of its members is not required. Thus, in this narrow situation, the third prong of associational standing is met.

I strongly agree with the general thrust of the majority that the focus of this Court should be on individual claims. However, organizations have a legitimate interest in

advocating for their individual members. This is especially true in the context of matters related to veterans benefits, where veterans service organizations have long been one of the threads from which the fabric of such benefits is woven. In my view, the appropriate means to give voice to the concerns expressed by the majority is not to bar The American Legion or similar organizations access to this Court, at its doorstep, but instead to exercise the Court's substantial latitude to evaluate the third prong of the test for whether the writ itself should be granted, i.e., the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380–81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004). In that regard, given the unique character of this Court, an appropriate consideration may be, as here, whether a petition by an individual that, if granted, would provide the same relief is currently pending before the Court.

SCHOELEN, *Judge,* dissenting:

I respectfully dissent from the majority's opinion in this case because the majority has muddled the concepts of subject-matter jurisdiction and standing. Once these concepts are untangled, it is clear that the Court has jurisdiction to hear the instant petition and that The American Legion has standing to bring it.

## I.  SUBJECT–MATTER JURISDICTION

Concerned with the lack of clarity in courts' use of the word "jurisdiction," the U.S. Supreme Court has stated that the only jurisdictional concepts are "prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick*

*v. Ryan,* 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 1242, 163 L.Ed.2d 1097 (2006) ("This Court, no less than other courts, has sometimes been profligate in its use of the term ['jurisdiction']."). The Court need not address further the issue of personal jurisdiction because that concept only protects defendants in a lawsuit from having to defend their conduct in a forum in which they have no presence. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In the instant petition, only the personal jurisdiction of this Court over the respondent could be called into question, and the Secretary could not reasonably dispute this Court's personal jurisdiction over him.

However, the Secretary does dispute this Court's subject-matter jurisdiction over the instant petition. This Court, like all Federal courts, is a court of limited jurisdiction whose subject-matter jurisdiction does not extend beyond that authorized by the U.S. Constitution or by Federal statute. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *see Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (stating rule that a Federal court created by statute derives its jurisdiction exclusively from the statutory grant provided by Congress, and the Court may not extend its jurisdiction beyond that permitted by law).

This Court's subject-matter jurisdiction is generally defined by 38 U.S.C. § 7252(a), which confers upon this Court "exclusive jurisdiction to review decisions of the Board." The majority also cites 38 U.S.C. § 7266(a) as governing the Court's jurisdiction. Section 7266(a) states that, in order to obtain review by this Court, "a person . . . shall file a notice of appeal with

the Court...." After citing 38 U.S.C. §§ 7252(a) and 7266(a), the majority discusses why The American Legion is not a "person" within the meaning of section 7266(a). However, this discussion misses the point. The American Legion does not claim to be a "person" within the meaning of section 7266(a), nor does The American Legion seek extraordinary relief regarding its own claims. Rather, it is the *members* of The American Legion whose appeals are stayed by the Board, and The American Legion seeks relief for those *members.* Thus, the Court need only satisfy itself that the Court will have jurisdiction over the *members'* claims to satisfy the subject-matter jurisdiction requirement.

The AWA jurisprudence supports this point. The Court's jurisdiction over this petition is not based upon 38 U.S.C. § 7252, but upon 28 U.S.C. § 1651. Under the AWA, the Court has the authority to issue "all writs necessary or appropriate in aid" of its jurisdiction. 28 U.S.C. § 1651(a) (emphasis added); *see Cox v. West,* 149 F.3d 1360, 1363 (Fed.Cir.1998) (upholding this Court's authority to issue writs under the AWA). Although the AWA does not expand the Court's jurisdiction, *see id.,* the exercise of AWA power is not dependent upon actual jurisdiction (meaning that no Board decision is required for the Court to issue a writ), but it "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected." *FTC v. Dean Foods Co.,* 384 U.S. 597, 603, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966). Thus, the Court's jurisdiction to issue a writ "depends upon whether the Court would have jurisdiction to review the final [Board] decision that would issue pursuant to that order." *In re Cox,* 10 Vet.App. 361, 370 (1997), *vacated in part on other grounds, Cox v. West, supra.*

In this case, it is clear that the "action sought by mandamus is within the [C]ourt's statutorily defined subject[-]matter jurisdiction." *In re Wick,* 40 F.3d 367, 373 (Fed.Cir.1994). The Court has jurisdiction to issue the writ sought by The American Legion because the relief sought is limited to the adjudication of the claims of the individual members. The Court clearly has potential jurisdiction over those individual members' claims. *See* 38 U.S.C. §§ 7252(a), 7266(a). Allowing The American Legion to pursue the individual members' claims would not aggrandize the Court's jurisdiction because the granting of the extraordinary relief sought by the petitioner would only result in the adjudication of the individual claims over which the Court would have jurisdiction.

Finally, to see that it is clear that the Court has jurisdiction over the instant petition, one need look no farther than the identical petition that was filed at the same time by an individual claimant. *See Ribaudo v. Nicholson,* U.S. Vet.App. No. 06–2762 (Argued Dec. 6, 2006). The Secretary does not dispute the Court's jurisdiction to hear Mr. Ribaudo's petition, nor has the Court sua sponte requested that the parties brief the issue in that case. Because Mr. Ribaudo and The American Legion seek identical relief (rescission of the Board Chairman's memorandum and adjudication of individual claims), the Court's analysis of subject-matter jurisdiction in each case should yield the same result.

## II. STANDING

The question of standing is independent of the Court's subject-matter jurisdiction and derives from the case or controversy restraints of Article III of the U.S. Constitution. *See* U.S. CONST. art III, § 2. Because this Court was created under Article I of the U.S. Constitution, this Court is not

constitutionally bound to follow the case or controversy restraints on the judicial power of Article III courts. *See* 38 U.S.C. § 7251; *Nolan v. Nicholson,* 20 Vet.App. 340, 348 (2006). However, as a matter of policy, this Court has always followed the Article III case or controversy requirements. *See Mokal v. Derwinski,* 1 Vet. App. 12, 14 (1990). One such requirement is that parties before the Court must have standing, meaning they must " 'personally ha[ve] suffered some actual or threatened injury as a result of the putative illegal conduct.' " *Waterhouse v. Principi,* 3 Vet. App. 473, 475 (1992) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

The U.S. Supreme Court has recognized that, "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In order for an association to have standing to bring suit on behalf of its members, it must satisfy a three-part test: (1) Its members must otherwise have standing to sue in their own right, (2) the interests the association seeks to protect must be germane to its purpose, and (3) neither the claim asserted, nor the relief requested, must require the participation of the individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see Disabled Am. Veterans v. Gober,* 234 F.3d 682, 689 (Fed.Cir.2000). There can be no question that The American Legion satisfies the first two prongs of this test because it has submitted undisputed evidence that at least one of its members has had a claim stayed by the Board, *see Disabled Am. Veterans,* 234 F.3d at 689 (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.* [hereinafter *UFCW*], 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996)), and the continued adjudication of its members' claims is germane to The American Legion's purpose, *see id.*

The third prong of the *Hunt* test does not derive from constitutional requirements, but it is based upon "administrative convenience and efficiency." *Id.* at 556–57, 116 S.Ct. 1529. While this Court is not constitutionally bound by any of the case or controversy restraints of Article III, *see Nolan* and *Mokal,* both *supra,* making the entire standing inquiry prudential in this Court, nonetheless, this Court is bound to follow the decisions of the U.S. Supreme Court when applicable regardless of whether such decisions are based on constitutional grounds, statutory grounds, or prudential grounds. *See* U.S. Const. art. III, § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."). The notion that the third prong of the *Hunt* test is prudential does not give the Court license to redefine the test. *See UFCW,* 517 U.S. at 556, 116 S.Ct. 1529 ("To see *Hunt's* third prong as resting on less than constitutional necessity is not, of course, to rob it of its value."). Thus, it is unclear what is the basis for the majority's contrary suggestion that we are not necessarily bound to follow the U.S. Supreme Court's jurisprudence on associational standing.[1] *Ante* at 3–4.

---

1. In his brief, the Secretary incorrectly refers to "[F]ederal courts of general jurisdiction" to suggest that the associational standing jurisprudence is inapplicable or inapposite. Secretary's Response to November 14, 2006, Court Order at 10. However, there are no Federal courts of general jurisdiction; *all* Federal courts are courts of *limited* jurisdiction, and this Court's limited jurisdiction is no

Rather, the prudential nature of the test means only that Congress may, by legislation, expressly allow or foreclose associational standing. *See Reid v. Dep't of Commerce,* 793 F.2d 277, 280 (Fed.Cir.1986) (noting that "Congress, through the exercise of its legislative power, can resolve the question of prudential limitations on standing one way or the other"). For example, in *UFCW,* Congress expressly authorized unions to sue for damages on behalf of their members, and, therefore, the U.S. Supreme Court did not require the UFCW to satisfy the third prong of the *Hunt* test in order to establish associational standing. 517 U.S. at 558, 116 S.Ct. 1529. The Federal Circuit reached the opposite conclusion in *Reid,* finding that Congress had expressly denied unions associational standing to bring a claim before the Merit Systems Protection Board by its use of the term "employee." 793 F.2d at 282.

In this case, the majority appears to find that the use of the term "person" in 38 U.S.C. § 7266(a) expresses a "clear" congressional intent to deny associational standing. In so finding, the majority relies upon the statements of Senator Cranston in support of the VJRA, in which he discussed such concepts as "fairness to *individual* claimants" and "*veterans directly affected* by various VA actions." *Ante* at 4–5. The majority fails to recognize that these statements were made in the context of endorsing the broader concept of judicial review of veterans' claims and were in no way an attempt to limit the Court's authority. There is no evidence Senator Cranston, any other Senator or Representative, or Congress in general had even considered the concept of associational standing in enacting the VJRA. But, even accepting the Court's conclusion that the use of the term "person" in section 7266(a) expresses a clear intent by

Congress to preclude an association from bringing an appeal on behalf of its individual members, it does not necessarily follow that Congress intended the same limitation to apply in petitions for extraordinary relief brought under the AWA, where the Court would be acting in aid of its potential jurisdiction over the members' claims. Indeed, Senator Cranston endorsed the use of the AWA in supporting the creation of this Court by stating that "'I would expect the court to utilize this power when it [is] . . . necessary for it to do so in order for justice to prevail.'" *Erspamer v. Derwinski,* 1 Vet.App. 3, 6–7 (1990) (quoting 134 Cong. Rec. S16,648 (daily ed. Oct. 18, 1988) (statement of Sen. Cranston)). The majority finds congressional intent to deny associational standing based upon Congress's silence on an issue that was never expressly considered. I do not find that there was congressional intent to deny (or to allow) associational standing in petitions for extraordinary relief brought in this Court under the AWA, and accordingly, The American Legion's standing to bring this petition rests upon a determination of whether it has satisfied the third *Hunt* prong.

In applying the third prong of the *Hunt* test, it is generally the nature of the remedy that determines whether the participation of the individual members is required. Where an association seeks prospective or injunctive relief, rather than monetary damages, individual participation by the individual members is not normally necessary. *See, e.g., UFCW,* 517 U.S. at 546, 116 S.Ct. 1529; *Hunt,* 432 U.S. at 343, 97 S.Ct. 2434; *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.,* 448 F.3d 138, 150 (2d Cir.2006) (stating that, "'where the organization seeks a purely legal ruling

basis on which to ignore U.S. Supreme Court

precedent. *See Kokkonen, supra.*

without requesting that the federal court award individualized relief to its members, the *Hunt* test may be satisfied'" (quoting *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir.2004))); *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 307 (1st Cir.2005) (finding that equitable relief, as opposed to monetary damages, "'would inure to the benefit of those members of the association actually injured,'" and, therefore, that individual participation of the members was not required (quoting *Warth*, 422 U.S. at 515, 95 S.Ct. 2197)). In contrast, where an association seeks damages on behalf of its members, individual participation is generally required. *See, e.g., UFCW*, 517 U.S. at 554, 116 S.Ct. 1529; *Harris v. McRae*, 448 U.S. 297, 321, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) (finding individualized participation necessary because, in a case brought under the Free Exercise Clause, an individual must demonstrate an enactment has a coercive effect upon the practice of his religion); *Friends for Am. Free Enter. Ass'n v. Wal–Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir.2002) (finding individual participation necessary where tort claims would be based upon choice of law questions); *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 849–50 (9th Cir.2001) (en banc) (finding individual participation necessary in a takings claim because the determination of what compensation was due to victims of a taking necessarily required participation of the individual members).

The instant petition clearly falls into the former category. The relief sought by The American Legion is prospective—the timely adjudication of its members' claims. The relief sought does not depend on the results of any of its members' adjudications. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 287–88, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986) (finding

the participation of individual union members unnecessary, even where "the unique facts of each UAW member's claim will have to be considered by the proper state authorities before any member will be able to receive the benefits allegedly due him"). Thus, The American Legion satisfies the third prong of the *Hunt* test and has established its associational standing.

Because I would find that the Court has jurisdiction to hear this petition and that The American Legion has standing to bring it, I would consolidate this petition with *Ribaudo, supra*, and decide it on the merits in due course. I respectfully dissent.