# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-2638

ALAN KEITH GLADISH, APPELLANT,

AND

No. 24-3371

JOSEPH W. BURWELL, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 30, 2025)                    Decided November 24, 2025)

*Kenneth H. Dojaquez,* of Topeka, Kansas, for the appellants.

*James L. Heiberg*, with whom *Danielle A. Runyan* Acting Deputy General Counsel; *David L. Quinn*, Assistant Chief Counsel; and *Melissa A. Timbers,* Deputy Chief Counsel, all of Washington, D.C., were on the brief for appellee in docket no. 24-2638.

*Safiya L. Dixon* and *Carolyn F. Washington,* Deputy Chief Counsel, both of Washington, D.C., were also on the brief for appellee in docket no. 24-3371.

Before ALLEN, *Chief Judge*, and PIETSCH and FALVEY, *Judges*.

FALVEY, *Judge*: Congress didn't want to punish claimants for VA's mistakes, so it enacted 38 U.S.C. § 5112(b)(10) to make sure VA could fix erroneous awards only prospectively—not by reducing past awards to claw back past payments. But when VA doesn't make an erroneous award and simply pays the wrong amount, can it recover that money by deducting from future benefits? In *Casey v. Wilkie*, 31 Vet.App. 260, 267 (2019), we held that section 5112(b)(10) didn't bar VA from collecting such a mistaken payment in the accrued-benefits context because recoupment wasn't a "reduction." But *Casey* left open the question of whether the same rule applies when VA overpays compensation benefits that include both a retroactive lump-sum and continuing monthly payments. Today, we answer that question.

We consolidated the appeal of Air Force veteran Alan Keith Gladish from a December 22, 2023, Board of Veterans' Appeals (Board) decision with the appeal of Marine Corps veteran Joseph William Burwell from a January 19, 2024, Board decision; both decisions upheld VA's deduction of overpayments resulting from its failure to withhold 20% of each veteran's past-due benefits necessary to pay their accredited representative. Extending *Casey*, we conclude that section 5112(b)(10) does not prevent VA from recouping an overpayment caused by VA's failure to withhold attorney or agent fees from past-due compensation. Fixing the payment mishap isn't a "reduction" of benefits; it is a deduction of a lawful debt under 38 U.S.C. § 5314. The veteran ends up with the correctly awarded benefits and the attorney or agent is properly compensated. And so, we affirm the Board decision in Mr. Burwell's appeal.

Mr. Gladish's appeal, however, presents a separate issue of a missed notice argument under 38 U.S.C. § 5104 and the Board's remand authority in the Veteran Appeals Improvement and Modernization Act of 2017 (AMA) world. The Secretary believes that the Board's failure to address a raised argument is harmless because, under the AMA, the Board can only remand to correct pre-decisional duty-to-assist errors. The Secretary is wrong. Thus, we find that under the AMA, the Board's remand authority isn't limited to duty-to-assist errors—it may also remand to correct other agency of original jurisdiction (AOJ) errors when doing so has a reasonable possibility of substantiating the claim. This means that we can't accept the Secretary's harmless-error argument and must set aside and remand the Board decision in Mr. Gladish's case.

## I. PROCEDURAL HISTORY

The facts aren't in dispute, and they tell a simple story: VA made the same clerical mistake twice. James Perciavalle, an accredited claims agent, represented both Mr. Gladish and Mr. Burwell before VA. And with Mr. Perciavalle's help, both obtained an increase in their benefits. Unfortunately, VA fell short when it came to paying Mr. Perciavalle 20% of each veteran's past-due benefits as required by their respective fee agreements and as permitted by 38 U.S.C. § 5904(d). After noticing its error, VA paid Mr. Perciavalle 20% and recovered the overpayment from Mr. Gladish and Mr. Burwell. The dispute before us is about whether VA was permitted to recoup that overpayment or whether VA and the taxpayers were now on the hook for the excess 20% paid to Messrs. Gladish and Burwell. We summarize the essentials below.

2

Mr. Gladish hired Mr. Perciavalle to represent him in April 2018 with a valid fee agreement allowing for direct payment from VA to Mr. Perciavalle of 20% of any retroactive award of VA benefits. Gladish Record (GR.) at 388-93.

After successful representation by Mr. Perciavalle, VA granted Mr. Gladish additional benefits resulting in a past-due benefits award of $65,874.18. GR. at 201-03, 252-60, 271-76. Twenty percent of that amount—$13,174.84—was owed to Mr. Perciavalle. GR. at 140-42. VA failed to withhold that money, paying the full sum to Mr. Gladish and nothing to Mr. Perciavalle, and then, upon recognizing its error, VA paid Mr. Perciavalle his fees and initiated the deduction of the overpayment from Mr. Gladish's monthly benefits. GR. at 112-13.

Mr. Gladish appealed to the Board arguing, among other things, that the overpayment was the sole fault of VA caused by its failure to withhold the fee in the first place. GR. at 62-67. He also argued that the AOJ's notification letters failed to comply with 38 U.S.C. § 5104. GR. at 64.

In finding the overpayment recoupment valid, the Board acknowledged that VA failed to withhold the required 20% of the total lump sum past-due benefits payment. GR. at 9. But the Board concluded that recouping that overpayment was not a reduction or discontinuation of benefits under section 5112(b)(10). *Id*. The Board did not touch Mr. Gladish's other arguments.

Similar errors plague Mr. Burwell's claim. After he hired Mr. Perciavalle, VA awarded Mr. Burwell $12,670.28 in retroactive benefits, which VA paid directly to Mr. Burwell in full. Burwell Record (BR.) at 327. VA subsequently recognized that it had failed to withhold $2,519.88 for Mr. Perciavalle and, after discovering this error, it paid him his full 20% fee; VA then sought to deduct Mr. Burwell's overpayment from his monthly benefits. BR. at 270-71.

Disagreeing with this solution, Mr. Burwell appealed to the Board. BR. at 264. And, mirroring the decision in Mr. Gladish's appeal, the Board found that VA's actions did not amount to a reduction in benefits. BR. at 9-10.

This brought Messrs. Gladish and Burwell to this Court. Both veterans root their arguments in section 5112(b)(10). This statute says that"[t]he effective date of a reduction or discontinuance of compensation, dependency and indemnity compensation[ (DIC)], or pension by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of last payment." 38 U.S.C. § 5112(b)(10).

To see what that provision does—and doesn't—cover, we turn to the statutes and existing law that govern when VA may reduce benefits and when it must collect debts.

3

## II. LEGAL FRAMEWORK

### A. Compensation, DIC, and Pension

First, because section 5112(b) speaks about reducing compensation, DIC, and pension, we should familiarize ourselves with what those are. All three are monthly benefits that VA pays to veterans and their survivors.

Compensation is authorized by 38 U.S.C. § 1110 or § 1131, depending on the circumstances of service, and is a monthly payment that VA provides "[f]or disability resulting from personal injury suffered or disease contracted in line of duty" or for disability resulting from military service. DIC, established under 38 U.S.C. § 1310, is a benefit paid to eligible survivors of service members who died in the line of duty or from a service-connected disability. Pension, found at 38 U.S.C. §§ 1521-1543, is a needs-based benefit paid to wartime veterans who are permanently and totally disabled from non-service-connected causes and who meet specific income and service requirements.

In short, compensation is for service-connected disability, DIC is for the survivors of certain deceased service members or veterans, and pension is for low-income wartime veterans disabled from non-service-connected causes. All three benefits are monthly awards that VA pays when claimants meet the specific statutory or regulatory requirements.

### B. VA's Authority to Collect Debts (section 5314)

As the existence of this Court implies, VA sometimes makes mistakes when dealing with these three (or other) benefits and these mistakes sometimes mean erroneous payments. Congress has required that all agencies, including VA, collect any debts, claims, or overpayments arising from their activities. Under the Federal Claims Collection Act of 1966, as amended by the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996, agencies must establish procedures for the recovery of money or property owed to the United States. Pub. L. No. 89-508, 80 Stat. 308 (1966), repealed and replaced by Pub. L. No. 97-365, 96 Stat. 1749 (1982), codified as amended at 31 U.S.C. §§ 3701, 3711. Section 3711(a)(1) provides that "[t]he head of an executive . . . agency shall try to collect a claim of the United States Government for money or property arising out of the activities of, or referred to, the agency." 31 U.S.C. § 3711(a)(1). A "claim" or "debt" is defined broadly as "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States," including,

4

"without limitation, . . . overpayments, . . . and any other amount of money or property owed to the Government." 31 U.S.C. § 3701(b)(1).

Consistent with this general framework, VA's authority to recover debts appears in 38 U.S.C. § 5314(a), which requires the Secretary "to deduct the amount of the indebtedness of any person determined to be indebted to the United States [through] such person's participation in a benefits program administered by the Secretary from future payments made to such person under any law administered by the Secretary." In other words, the statute requires VA to collect debts that result from a claimant's participation in a VA program by withholding money from future payments.

### C. VA's Limitations on Reducing Benefits (section 5112)

But, as we said at the start, Congress also wanted to protect beneficiaries from bearing the brunt of certain VA errors. This is where section 5112(b)(10) comes in. It provides that "[t]he effective date of a reduction or discontinuance of compensation, [DIC], or pension by reason of an erroneous award based solely on administrative error or error in judgment shall be the date of last payment." 38 U.S.C. § 5112(b)(10). So, if VA awarded a claimant one of these three types of monthly benefits through some form of VA error and the claimant did nothing wrong, VA would only reduce the benefits after the last, or most recent, payment. This means that the reduction would be prospective only, preventing VA from creating any debt or overpayment. *Id.*

We can contrast this with section 5112(b)(9), where Congress decided that, if VA is reducing one of these benefits "by reason of an erroneous award based on an act of commission or omission by the beneficiary, or with the beneficiary's knowledge, [the effective date] shall be the effective date of the award." 38 U.S.C. § 5112(b)(9). So, if the claimant knew or should have known that they were not entitled to the award, the reduction would be effective the date of the erroneous award. Under this scenario, an overpayment results and VA can collect that money through its recoupment authority.

To sum up, section 5112(b)(10) prevents VA from creating a debt to recoup an award of one of these monthly benefits when the award is based solely on VA error. True, VA need not double down and continue to pay the erroneous award, but it can reduce the erroneous award after the most recent payment—or "the last payment." 38 U.S.C. § 5112(b)(10). If, on the other hand, the claimant bears some blame for the wrong award, VA can make the reduction effective back to the original erroneous award and then recoup the overpayment. 38 U.S.C. § 5112(b)(9). But how

5

does this work with lump-sum payments like the backpay awards Messrs. Gladish and Burwell received?

### D. How We've Balanced Debts with Reductions (*Casey*)

In figuring out the answer, we don't write on a blank slate. We already did much of the hard work in *Casey*, which addressed whether VA improperly reduced an award of accrued benefits under section 5112(b)(10) when it sought to recoup an overpayment stemming from VA's failure to withhold attorney fees. *Casey*, 31 Vet.App. at 265. Like here, VA's mistake was purely administrative, and the appellant argued that section 5112(b)(10) barred VA from collecting the overpaid amount because the debt resulted solely from VA's own error, meaning that VA could not reduce the claimant's award with future offsets. *Id*.

To explain why the appellant was wrong, we examined section 5112(b) in detail. We first observed that section 5112 allows VA to reduce how much a claimant was entitled to receive in specified circumstances. *Id*. at 266. But we explained that this is not what happened when VA sought to recover an overpayment of attorney fees it made when paying out accrued benefits. *Id*.

This is because "the grant of benefits [is not] diminished in size or amount simply because the total benefit must be apportioned and paid to two parties. The fact that VA could recover part of an excessive payment made by mistake doesn't mean that the initial grant itself was reduced." *Id. at* 267. And so, we concluded that, "[b]ecause neither the payment nor the initial grant of appellant's accrued benefits was reduced, . . . section 5112(b)(10) doesn't apply." *Id*.

Our reasoning, in part, turned on what happens when VA pays out fees. We observed that "when VA pays attorney fees under section 5904(d), it doesn't reduce the *amount* of . . . benefits; it allocates the *payment* to different payees." *Id*. In other words, "[t]he amount of benefits that resulted in such a one-time payment doesn't change when VA pays attorney fees under section 5904(d) out of the appellant's . . . benefits." *Id*. For this reason, "[i]n no event—whether VA correctly paid the attorney fees in the first instance or failed to do so and sought to recoup the fees (as it did here)—would we describe the appellant's benefits as subject to a 'reduction' under section 5112(b)(10)." *Id*.

Parsing the statutory provision, we concluded that section 5112(b)(10) did not apply to a one-off payment like accrued benefits but was meant to deal with reduction of ongoing monthly benefits. *Id.* at 269. To back this conclusion, we cited legislative history reflecting that "Congress intended section 5112(b)(10) 'to include cases in which an erroneous action was predicated on a

6

misunderstanding of existing instructions or regulations or the applicable construction of statute. Thus, while no overpayment would be created requiring recovery, there would be no *perpetuation* of the erroneous action.'" *Id.* (quoting S. REP. NO. 87-2042 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3260, 3266-67).

In the end, "we h[e]ld that section 5112(b)(10) doesn't apply in the appellant's case so as to make VA's creation of an overpayment improper because no 'reduction' of 'compensation, [DIC], or pension' as contemplated by section 5112(b)(10) occurred." *Id*. at 271 (second alteration in original). But we also noted that "[w]e express[ed] no opinion as to whether section 5112 applies in the context of an award of compensation, DIC, or pension that results in *both* a one-time retroactive payment of past-due benefits and recurring monthly benefits." *Id.* at 268 n.59. And we flagged that, under *Nolan v. Nicholson*, 20 Vet.App. 340, 348 (2006), "retroactive awards of disability compensation benefits are considered 'periodic monetary benefits,' even though the actual payment of retroactive benefits is made in a one-time lump sum payment." *Id*.

This legal backdrop brings us to the current dispute. Both veterans read section 5112(b)(10) as barring VA from recovering what it mistakenly paid, while the Secretary insists that the statute does no such thing.

### III. THE PARTIES' ARGUMENTS
#### A. The Veterans' Arguments

Mr. Gladish contends that section 5112(b)(10) bars VA from reducing his ongoing compensation to recover the overpayment caused solely by VA's own administrative error. VA was supposed to withhold his agent's fee and mistakenly didn't. For him, this is precisely the kind of situation covered by section 5112(b)(10). As to *Casey*, he tells us that it doesn't apply because it concerned a one-time accrued-benefits payment, not recurring monthly compensation; this is why he maintains that VA's withholdings of his benefits are the "reductions" prohibited by the statute. Gladish Appellant's Brief (Gladish App. Br.) at 5-9.

As we'll discuss later, he also emphasizes that the Board ignored his argument about section 5104 and insists that the Board's failure to resolve this argument requires remand, even if the Board was right about section 5112. Gladish App. Br. at 15-18; Gladish Reply Brief (Gladish Rep. Br.) at 8-10.

Mr. Burwell similarly argues that section 5112(b)(10) renders the overpayment void because VA's mistake was administrative. Burwell App. Br. at 3-6. He too believes that *Casey* does not apply because it dealt with a different context. He thus maintains that VA's prospective withholding constitutes a "reduction," that he bears no fault, and that VA's position misinterprets "administrative error." Burwell Reply Br. at 5-6.

### B. The Secretary's Retort

The Secretary argues that section 5112(b)(10) governs only the effective date of reductions, not the validity of debts, and that VA lawfully recouped the overpayment under section 5314. *See* Burwell Secretary's Brief (Burwell Sec. Br.) at 7-9; Gladish Sec. Br. at 5-7. As he sees it, this case starts and ends with *Casey* because both cases involve VA's failure to withhold attorney fees from a one-time payment. Responding to Mr. Gladish's concerns about his unaddressed argument and section 5104 notice, the Secretary tells us that the Board's failure to address the argument is harmless because the Board lacked authority to remand to correct notice errors under the AMA. Gladish Sec. Br. at 10-12.

With these issues now framed, we start where the veterans do—with section 5112(b)(10)—and then address the separate question Mr. Gladish raises about notice and the Board's remand authority.

### IV. DOES SECTION 5112(b)(10) APPLY HERE?

### A. Section 5112(b)(10) Requires a Reduction of an Erroneous Award.

When faced with a dispute over a statutory provision, we begin with the text of the statute; if its meaning is clear, that is the end of the matter. *Andrews v. McDonough*, 34 Vet.App. 151, 158 (2021). Section 5112(b)(10) tells us that when the reduction or discontinuance of compensation, DIC, or pension results from "an erroneous award based solely on administrative error or error in judgment," the effective date of that reduction "shall be the date of last payment." 38 U.S.C. § 5112(b)(10). In *Casey*, we found that the plain text of section 5112(b) controls when VA can reduce an award or legal entitlement for various reasons. *Casey*, 31 Vet.App. at 267-68. By its plain text, this provision governs the timing of a reduction, not the validity of a debt—the provision speaks specifically about when a reduction due to administrative error can take place. And it applies to the types of ongoing monthly benefits we explained above—compensation, pension, and DIC. And, read in context, Congress placed section 5112 in a chapter titled "Effective Dates

8

of Reductions and Discontinuances," signaling that its purpose is to regulate when VA may reduce or discontinue the monthly award of these benefits, not to deal with VA's authority to claw back an overpayment. *See Casey*, 31 Vet.App. at 267.

That authority is found in section 5314(a), which requires the Secretary to "deduct the amount of the indebtedness . . . from future payments made to such person under any law administered by the Secretary" when such debts stem from "such person's participation in a benefits program administered by the Secretary." 38 U.S.C. § 5314(a). Or in simpler terms, VA must deduct from future payments any debts resulting from a person's participation in a VA program. Generally, if VA overpays a claimant, Congress wants VA to recover that money by deducting it from future payments.

At bottom, we would need a reduction in benefits here to make section 5112(b)(10) apply. Here, we don't have such a reduction. Instead, we have VA exercising its authority to recover a debt by deducting it from future payments.

### B. Recouping an Overpayment Is Not a Reduction.

On this point, *Casey* teaches us that, "when VA pays attorney fees under section 5904(d), it doesn't reduce the amount of . . . benefits; it allocates the payment to different payees." 31 Vet.App. at 267. And we also know from *Casey* that "[i]n no event—whether VA correctly paid the attorney fees in the first instance or failed to do so and sought to recoup the fees (as it did here)—would we describe the appellant's benefits as subject to a 'reduction' under section 5112(b)(10)." *Id*.

To be sure, we stressed that our decision in *Casey* did not address "an award of compensation, DIC, or pension that results in both a one-time retroactive payment of past-due benefits and recurring monthly benefits." *Id*. at 268 n.59. But, faced with that situation now, we see no reason to depart from *Casey*'s well-reasoned analysis.

Whether in the context of accrued benefits or with backpay of monthly benefits paid out as a lump sum, we do not think VA reduces an award of benefits under section 5112(b) when it pays part of the claimant's benefits to the attorney. As with *Casey*, that is still an allocation of payment. The award remains the same. To show why, we'll offer a hypothetical.

Consider a scenario where VA decides to ease its administrative burden by paying veterans annually at the beginning of the calendar year vice monthly. So, for this hypothetical veteran who is rated at 100%, VA would pay her $45,975.60 at the start of the year rather than make monthly

9

payments of $3,831.30. *See* https://www.va.gov/disability/compensation-rates/veteran-rates/. To be sure, that veteran would no longer receive a monthly payment, but in no reasonable sense could we say that the veteran's award of benefits was "reduced" just because the veteran is no longer getting a monthly check. VA just changed how it paid out the benefits.

At bottom, the same thing happens when VA deducts an overpayment from future payments under section 5314(a); VA is modifying how the veteran gets the awarded funds, not the amount of the award.

We can't forget that Congress wrote both section 5112(b)(10) and section 5314(a). Section 5112(b)(10) deals with the effective date of the reduction of compensation because of "an erroneous award." Section 5314(a) speaks to "deduct[ing] the amount of the indebtedness . . . from future payments" when that indebtedness results from a "person's participation in a benefits program administered by the Secretary."

We do not think that Congress meant to equate a reduction of benefits based on an erroneous award to a deduction of an overpayment. When faced with different statutory terms in a wider statutory context, we do our best to read them together. *Loomis v. Collins,* 38 Vet.App. 319, 326 (2025) (explaining that "[v]ariations in statutory language are often deliberate" and that the statutory scheme must be read in context). Here, that means we read section 5112(b)(10) as focusing on when VA can reduce a claimant's ongoing award of benefits, while section 5314(a) deals with when VA needs to withhold funds to recover a debt owed to the United States.

Harmonizing these two statutes, we see that section 5112 governs when VA can reduce the claimant's monthly award of compensation, pension, or DIC. That's the plain text of the statute. 38 U.S.C. § 5112. In other words, section 5112 lays out different timing rules for when VA can modify the claimant's legal award through a reduction or discontinuation. *Id*. Section 5314(a) does different work by modifying the amount of money that the claimant receives to collect an overpayment. The claimant's award or legal entitlement is not modified—for example, a veteran would not end up with a lower rating or termination of service connection just because VA followed Congress's mandate to deduct a debt from the veteran's payments. This is the same as "when VA pays attorney fees under section 5904(d), it doesn't reduce the *amount* of . . . benefits; it allocates the *payment* to different payees." *Casey*, 31 Vet.App. at 267. In the case of section 5904, one payee is the claimant and the other the agent or attorney; for section 5314, the other

10

payee is the American taxpayer with VA collecting a debt owed to the government. In both cases, the benefits awarded remain unchanged.

If, on the other hand, we try to credit appellants' reading of section 5112(b)(10), we erase the different terms Congress used when writing the two statutes. Section 5112 speaks in terms of the effective date for the reduction or discontinuation of various monthly payments. But we can't decide if a reduction or discontinuation happened just by looking at the deposit at the end of the month; the amount of money VA finally pays the claimant can change even without a reduction.

Afterall, the operation of section 5314 can also modify a monthly payment. But when Congress wanted to tell VA how to collect funds that it overpaid, it spoke in terms of "deduct[ing] the amount of the indebtedness." 38 U.S.C. § 5314(a). Thus, taking some portion of monthly benefits to pay back money owed to the U.S. Government is not a "reduction"—Congress didn't say the Secretary will collect a debt by "reducing" the veteran's award—Congress called that a deduction.

More to the point, if changing the monthly benefit amount to recover a debt was considered a "reduction" under section 5112, we can't see how section 5314 could function; no part of 5112 assigns an effective date for a "reduction" to recover a debt. The only way to make both statutes work is to accept that section 5112 governs when VA reduces the amount of money to which a claimant is legally entitled based on the VA award while section 5314 modifies what VA does with that entitlement—paying some to the claimant and using some to pay back the claimant's debt to the public fisc. To be sure, both processes can impact the monthly payment, but only one changes the claimant's award.

### C. VA Did Not Reduce Mr. Gladish or Mr. Burwell's Benefits.

This is why, despite a change in their monthly payments, neither Mr. Gladish nor Mr. Burwell ended up with less money than they were legally entitled to; they both received exactly what they were supposed to have received and precisely what VA awarded them. VA did not reduce their benefits based on an erroneous award; it offset a windfall by collecting a debt. VA's award was fine; it's the execution of that award that went wrong when VA paid too much directly to Messrs. Gladish and Burwell.

In other words, VA did not change the amount of money it awarded Mr. Gladish or Mr. Burwell. When VA realized it paid them too much money because of their participation in the Secretary's benefits program, VA sought to deduct the amount overpaid from future payments until

11

the overpayment was recouped. Just as Congress intended in section 5414(a). What VA did not do is try to reduce the award of compensation retroactively—something Congress prohibited in section 5112(b)(10). After VA acted to recoup the overpayment, Mr. Gladish, Mr. Burwell, and their agent were left with 100% of the award; VA corrected the overpayment to recover the extra 20% windfall.

As we discussed in *Casey*, "Congress intended section 5112(b)(10) 'to include cases in which an erroneous action was predicated on a misunderstanding of existing instructions or regulations or the applicable construction of statute. Thus, while no overpayment would be created requiring recovery, there would be no *perpetuation* of the erroneous action.'" 31 Vet.App. at 267. In other words, if VA got the law wrong or made some other error when it awarded benefits, Congress wanted VA to fix that error without trying to get any money back that VA already awarded.

To see how section 5112(b)(10) is meant to work, consider another hypothetical. VA awards separate ratings to a veteran with a single disability that has been diagnosed as both a physical and mental disorder. This would be an erroneous award under 38 C.F.R. § 4.126(d), which tells VA that if "a single disability has been diagnosed both as a physical condition and as a mental disorder, the rating agency shall evaluate it using a diagnostic code which represents the dominant (more disabling) aspect of the condition." 38 C.F.R § 4.126(d) (2025). VA realizes this mistake 4 months after granting benefits. When VA seeks to reduce the veteran's award by taking away the rating for the less disabling aspect of the condition, section 5112(b)(10) would kick in, and VA could only reduce the award after the last payment it made. That is, the veteran's award or legal entitlement would change only prospectively. Hence, there would be no debt to collect and section 5314 wouldn't come into play.

To make section 5314 relevant, imagine that the claimant bore some culpability for VA's erroneous award of the separate rating. Recall that this would implicate section 5112(b)(9), which allows VA to make the reduction effective on the "date of the award." 38 U.S.C. § 5112(b)(9). In that case, our not-so-blameless claimant would be on the hook for any funds VA paid out for the erroneous award and VA could withhold that debt from any future payments under section 5314(a).

If we want a scenario closer to what happened here that illustrates why we don't have a reduction, consider a fat-fingered deposit. After VA correctly awards a veteran her 100% rating, a VA employee adds an extra zero when inputting the monthly payment (we're pretending this is a

12

manual process), thus leading to an erroneous monthly payment of $38,313.00 instead of the correct amount of $3,831.30. When VA follows Congress's direction under section 5314(a) to get that money back by deducting the windfall from the veteran's future scheduled monthly payments, section 5112(b)(10) would not stand in the way. VA would not be reducing the veteran's award—that's still a 100% rating. And the veteran still qualifies for compensation at the 100% level, but the total she received in her account going forward would be offset through section 5314's deduction process.

That's essentially what we have here. The awards VA made to Mr. Gladish and Mr. Burwell remain the same. From the backpay amounts of each award, they were each entitled to 80%, while Mr. Perciavalle was entitled to 20% of each award. This was true when VA granted the benefits, and it remains true now. The only thing that's changed is that, because VA made a technical error when it processed the payments, VA has followed section 5314(a) to collect the resulting overpayment. As in *Casey*, no reduction occurred.

To resist this conclusion, the veterans cited our decision in *Dent v. McDonald*, 27 Vet.App. 362 (2015), at oral argument. Putting aside that invoking this case as major support for their argument only during the oral argument is cutting it far too close, *see* U.S. VET. APP. R. 28(a)(2); *Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999), *Dent* doesn't help them prevail. In *Dent*, we dealt with a situation where the veteran's income increased after he was awarded a non-service-connected pension. 27 Vet.App. at 365. Because his income went up, the veteran no longer qualified for the same monthly pension award. *Id*. at 365-68.

When responding to Mr. Dent's attempt to invoke section 5112(b)(10), the Secretary argued "that an assessment of whether an overpayment was based solely on administrative error applies only in the *initial* award of non-service-connected pension benefits or in the *initial* pension rate." *Id*. at 370. In other words, the Secretary believed that VA could only err in the award when it made the initial decision, not whenever it continued to pay the monthly benefit. We disagreed.

Reasoning that the ordinary meaning of "award" included both the initial grant of benefits and VA's decision to continue paying those monthly benefits, we held "that 'award' includes not only the establishment of an award but also award *payments* made subsequent to the initial grant of the award." *Id*. at 374. This means that, "[i]f there is a change in income and an erroneous payment of a pension award by VA based solely on administrative error, the effective date described in section 5112(b)(10) will apply." *Id*.

13

Relying on this "award payments" language, appellants would have us conclude that we've held that any payment made by VA is an award. As appellants see it, when VA paid them too much money, it awarded them that money. The problem is that "[j]udicial opinions must not be confused with statutes, and general expressions must be read in light of the subject under consideration." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). Thus, our conclusion in *Dent* about payments being awards must be read in context of the issue we were asked to decide there— whether 5112(b)(10) would apply only to the initial decision awarding benefits or could apply whenever VA made good on that decision by continuing to pay the awarded benefits. Such a holding makes sense—VA makes an award when it decides the veteran's entitlement, and it continues to make such an award as it pays the periodic monetary benefits—with each payment representing VA's continuing decision that the claimant remains entitled to those benefits. *See Dent*, 27 Vet.App. at 374 ("Congress intended that [section 5112(b)(9)-(10) applies] to 'the establishment or continuation of an award of payments which should not have been made.'") (citations omitted). But our discussion of payments and awards cannot logically be extended to conclude that any wrongful payment by VA is an award.

If we are to consider precedent that comes closest to controlling this case, we return to our *Casey* decision in which we held that VA acting pursuant to its statutory obligation to collect a windfall overpayment was not a reduction of benefits. *Casey*, 31 Vet.App. at 270-71. And, although we are not bound by the decision here, we simply see no reason to depart from its well-reasoned analysis. At bottom, VA deducting and collecting an overpayment is not a reduction. Just as we wouldn't say that an employer reduced an employee's salary if changes to insurance costs or the imposition of an IRS lien changed the amount the employee received in direct deposit, we wouldn't say VA reduced a veteran's benefits award under these circumstances. In both instances, the salary or benefits remain the same; their allocation does not. And "[b]ecause there was no reduction of an ongoing monthly benefit, we need not consider whether there was an erroneous award or whether . . . the overpayment was solely the result of administrative error."*Id*. at 271. This is the end of the road for the veterans' statutory arguments; we agree with the Secretary that section 5112(b)(10) did not bar VA from deducting the overpayment from their monthly payment. This also means that this is the end of Mr. Burwell's appeal. His challenge to the Board decision lives or dies with his arguments about section 5112(b)(10).

## V. MODERNIZED REMAND AUTHORITY

Mr. Gladish's appeal, however, survives. Among his other points, Mr. Gladish tells us that the Board did not address his argument that VA failed to provide him with the notice required under 38 U.S.C. § 5104. The Secretary doesn't meaningfully dispute that the Board ignored this notice argument. Instead, he directs us to 38 U.S.C. § 7261(b)(2)—the statutory requirement that we take due account of prejudicial error.

The Secretary contends that, even if the Board overlooked the issue, the error was harmless because the Board lacks authority to remand for correction of such notice defects. According to the Secretary, "38 C.F.R. § 20.802(a) [only] provides for remand to correct a pre-decisional duty to assist error if correction of the error would have a reasonable possibility of substantiating the claim." Gladish Sec. Br. at 10.

Mr. Gladish disagrees with such a cramped reading of the Board's remand authority. But he does not directly respond to the Secretary's mention of the duty to assist and instead focuses on the Secretary's assertion that the Board is limited to remanding only when there is a reasonable possibility of substantiating the claim. As he sees it, "[e]ither § 5104 compliant notice always aids in substantiating a claim or the Secretary's regulation requiring such a showing is invalid." Gladish Reply. Br. at 6. Even so, we do not need to deal with such absolutes to resolve this dispute.

### A. The Board Has Dual Remand Authority.

This is because § 20.802(a) is not as limited as the Secretary suggests. *See Witkowski v. Collins*, __ Vet.App.__, __, 2025 WL 2962604, at *13 (Oct. 21, 2025) (en banc) (noting that in AMA, "the Board has the discretion to remand for the correction of other errors"). True, under the regulation, if the Board cannot grant benefits in full, it "shall remand the appeal to the [AOJ] for correction of an error on the part of the [AOJ] to satisfy [the duty to assist]" if that error occurred before "the date of the [AOJ] decision on appeal." 38 C.F.R. § 20.802(a) (2025). This is the duty-to-assist restriction the Secretary brings up. But the regulation goes on to say that "[t]he Board may remand for correction of any other error by the [AOJ] in satisfying a regulatory or statutory duty, if correction of the error would have a reasonable possibility of aiding in substantiating the appellant's claim." *Id*. Thus, contrary to the Secretary's argument, there are two distinct clauses addressing the Board's authority to remand.

The first clause covers duty-to-assist errors and makes remand nearly automatic. Once the Board identifies a predecisional duty-to-assist error, it must remand. Perhaps this is moored by

15

38 U.S.C. § 5103A(a)(2), which provides that "[t]he Secretary is not required to provide assistance to a claimant . . . if no reasonable possibility exists that such assistance would aid in substantiating the claim." Outside of that narrow circumstance, however, the Board has no discretion—it must send the matter back.

The second clause gives the Board discretion to address other types of errors. It empowers the Board to remedy non-duty-to-assist errors—presumably including notice deficiencies under section 5104—if fixing those errors can help substantiate the claim.

With two separate clauses, the Secretary oddly seeks to merge them into one—he wants the duty to assist from the first one and the reasonable-possibility standard from the second—to arrive at his briefed view that the Board can only remand for the AOJ to fix duty-to-assist errors if there was a reasonable possibility of substantiating the claim. It could also be that the Secretary only recognizes duty-to-assist remands and his reference to the reasonable-possibility standard is based on the statutory limitation of that duty found in section 5103A(a)(2). In the end, we don't know.

What we do know is that, for some reason, the Secretary ignores that the Board has discretion to remand for correction of non-duty-to-assist errors. This means that, if the Board encounters a mistake made by the AOJ in satisfying some duty, the Board can remand to correct that error if it finds that there is a reasonable possibility of substantiating the claim. 38 C.F.R. § 20.802(a).

### B. The Error Was Not Harmless.

Even if AMA changed the appellate process and the Board's remand authority, it did not change the Board's duty to address those issues raised by the claimant or the record. *Robinson v. Peake*, 21 Vet.App. 545, 552-53 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Here, Mr. Gladish brought to the Board's attention a potential error; he believed that the AOJ did not comply with section 5104. The Board failed to address this argument, and that means it erred.

To agree with the Secretary that the error was harmless, we would have to venture far beyond our jurisdictional limitations and resolve factual questions that are open to debate. *See Tadlock v. McDonough*, 5 F.4th 1327, 1336 (Fed. Cir. 2021). We can neither find facts nor weigh the evidence in the first instance. *Stinson v. McDonough*, 92 F.4th 1355, 1360-66 (Fed. Cir. 2024) (citing *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013)).

16

Put more concretely, we would need to resolve Mr. Gladish's underlying notice argument—so decide whether VA complied with section 5104—or conclude that fixing any notice error would have no reasonable possibility of substantiating the claim. Perhaps with more developed arguments seeking to explain why there is no such reasonable possibility, we could agree with the Secretary. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments); *Evans v. West*, 12 Vet.App. 22, 31 (1998) (noting that the Court will disregard vague assertions and unsupported contentions). But, with so few factual findings from the Board and a conclusory argument from the Secretary, we'll stay well within our jurisdictional lane and let the Board address Mr. Gladish's notice argument in the first instance. *See Tadlock*, 5 F.4th at 1336.

We recognize that Mr. Gladish believes that any limitation on the Board's remand authority is invalid. But his argument on why the reasonable-possibility standard can't survive matches the Secretary's in effort; both are underdeveloped. *See Locklear*, 20 Vet.App. at 416.

What's more, we simply need not decide the validity of any remand restrictions when the Board hasn't first determined whether there is an error and that remanding to fix such an error would not help substantiate the claim. "[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment).[1]

In this case, it suffices for us to recognize that the Board erred by failing to address Mr. Gladish's notice argument and to then reject the Secretary's harmless-error argument. If need be, Mr. Gladish can raise his contentions about the reasonable-possibility standard on remand. *See Andrews*, 34 Vet.App. at 161 n.77. This is also true of the other arguments we don't address; Mr. Gladish can raise them to the Board on remand. *See id*.

---

[1] This is a particularly valuable principle insofar as Mr. Gladish asks us to invalidate a regulation. At least in the federal system, "normally courts have inherent power, among other things, to remand cases." *Melkonyan v. Sullivan*, 501 U.S. 89, 101 (1991). But at the same time, Congress can limit that remand authority. *Id*. So, even if the principle extends to an executive tribunal such as the Board, we must wonder what, if anything, Congress's decision to speak to the Board's remand authority in 38 U.S.C. § 5103A(f)(2) does to VA's ability to fill gaps in that remand authority by creating a regulation. *See Sears v. Principi*, 349 F.3d 1326, 1329 (Fed. Cir. 2003) (explaining that an agency may issue regulations to fill gaps left by Congress). Before the AMA, the Board had a broad duty to remand matters even with post-decisional developments. *Palczewski v. Nicholson,* 21 Vet.App. 174, 181 (2007). When Congress spoke to that remand authority as part of a project to speed up the appellate process, did that leave room for the Secretary to create his own remand authority? We don't know. And here, we need not resolve this question.

## VI. CONCLUSION

In the end, these appeals, which end differently, lead to two conclusions. First, section 5112(b)(10) does not bar VA from collecting an overpayment that stems from its failure to withhold attorney or agent fees from past-due compensation. Such recoupment isn't a "reduction" of benefits but a lawful debt deduction under section 5314.

Second, under the AMA, the Board's remand authority isn't limited to duty-to-assist errors—it may also remand to correct other Agency errors, like notice deficiencies under section 5104, when doing so could reasonably help substantiate the claim.

Applying these holdings, we affirm the Board decision in Mr. Burwell's appeal and set aside and remand the Board decision in Mr. Gladish's appeal.

\* \* \*

Based on the above, the December 22, 2023, Board decision in Mr. Gladish's appeal is SET ASIDE, and the matter is REMANDED. The January 19, 2024, Board decision in Mr. Burwell's appeal is AFFIRMED.